LIBERTY MUTUAL INSURANCE COMPANY *vs.* CHESTER R. McLAUGHLIN.

Suffolk. January 7, 1992. - April 21, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Underinsured motorist, Motor vehicle insurance, Liability insurance, Coverage.

A policy of excess liability insurance (umbrella policy), which provided coverage for liability to third persons in excess of the limits of an underlying automobile insurance policy, was not a "motor vehicle liability policy" within the meaning of G. L. c. 175, § 113L, and thus did not provide underinsured motorist coverage. [493-494]

CIVIL ACTION commenced in the Superior Court Department on June 11, 1986.

The case was heard by *Julian T. Houston*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James F. McLaughlin* for the defendant.

*Michael S. Appel* for the plaintiff.

ABRAMS, J. Chester R. McLaughlin made demand on Liberty Mutual Insurance Company (Liberty) under his automobile liability insurance policy for the compulsory uninsured or optional underinsured motorist (UM) coverage, see G. L. c. 175, § 113L (1990 ed.), to cover damages resulting from his daughter's death in an automobile accident.[1] As a result of negotiations between McLaughlin and Liberty, a settlement was reached and McLaughlin collected the full amount of UM coverage available under the policies. Mc-

---

[1] McLaughlin also had purchased automobile insurance from Liberty for his two sons. He sought to collect benefits under these policies as well.

Laughlin then contended, however, that his personal catastrophe liability (umbrella) policy constitutes a motor vehicle liability policy under G. L. c. 175, § 113L, and also provides him with UM coverage up to the umbrella policy limit of $2,000,000. Liberty disagreed, and commenced an action for declaratory relief. The judge allowed Liberty's motion for summary judgment. The judge entered a judgment for Liberty declaring that McLaughlin's umbrella policy does not contain UM coverage. McLaughlin appealed. We transferred the case to this court on our own motion. The question is whether an umbrella policy constitutes a "motor vehicle liability policy" within the meaning of G. L. c. 175, § 113L (the UM coverage statute). If it is within G. L. c. 175, § 113L, it must provide UM coverage. We hold that an umbrella policy is not a motor vehicle liability policy and does not provide UM coverage.   ·

*Facts.* Following an automobile accident in which his daughter was killed while riding as a passenger in someone else's car, McLaughlin, as administrator of his daughter's estate, collected in satisfaction of any claim against them the full amount of primary insurance coverage available to the owner and driver of the vehicle from their automobile insurance carrier.

At the time of the accident, McLaughlin and his sons were insured under an automobile insurance policy as well as an umbrella policy issued by the Liberty Mutual Insurance Company (Liberty). The former insured two motor vehicles for UM coverage up to limits of $100,000 per person, and $300,000 per accident. Under the latter, McLaughlin was insured for liability to third parties in excess of the limits of liability coverage under two underlying policies owned by McLaughlin — the automobile insurance policy and a homeowner's policy.

*Discussion.* There is nothing in the language of either G. L. c. 175, § 113L, or McLaughlin's umbrella policy which would require Liberty to provide UM coverage to McLaughlin under his umbrella policy. General Laws c. 175, § 113L, which requires that all vehicle liability policies also in-

sure for UM coverage,[2] does not require umbrella policies to provide UM coverage; it applies only to the underlying auto insurance policy, and not to excess policies such as Mc-Laughlin's umbrella policy. Our decision fully comports with the policy goal of G. L. c. 175, § 113L, which is to ensure that each insured who suffers an injury is compensated to the same extent as she would have been had she been injured by a motorist who had purchased the minimum liability insurance coverage required. This policy goal is satisfied through the underlying auto insurance policy, the existence of which is a prerequisite to obtaining the umbrella coverage.

We construe insurance contracts "according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." *Cody* v. *Connecticut General Life Ins. Co.*, 387 Mass. 142, 146 (1982), quoting *MacArthur* v. *Massachusetts Hosp. Serv., Inc.*, 343 Mass. 670, 672 (1962). The clear language of McLaughlin's umbrella policy indicates that it protects solely against the risk of a judgment against an insured in excess of the policy limits for liability provided by the insured's underlying auto and homeowner's insurance policies; it does not provide UM coverage.[3]

Courts in other jurisdictions have considered whether an umbrella policy must provide UM coverage. While those courts have not reached a unanimous conclusion, we conclude that the more persuasive decisions hold that an umbrella policy is not an auto liability insurance policy under that jurisdiction's UM statute, and therefore need not pro-

---

[2]The statute states, in relevant part, that "[n]o policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state unless such policy provides coverage in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ."

[3]The policy reads, in relevant part, that "[t]he company will pay on behalf of the insured all sums in excess of the retained limit which the insured shall become legally obligated to pay as damages, direct or consequential, because of personal injury or property damage with respect to which this policy applies and occurring during the policy period."

vide UM benefits. See *O'Hanlon* v. *Hartford Accident & Indem. Co.*, 639 F.2d 1019, 1027 (3d Cir. 1981) (applying Delaware law); *Trinity Universal Ins. Co.* v. *Metzger*, 360 So. 2d 960, 962 (Ala. 1978); *Cohn* v. *Pacific Employers Ins. Co.*, 213 Conn. 540 (1990); *Contintental Ins. Co.* v. *Howe*, 488 So. 2d 917, 920 (Fla. Dist. Ct. App. 1986) (applying Rhode Island law); *Hartbarger* v. *Country Mut. Ins. Co.*, 107 Ill. App. 3d 391, 396 (1982), reh'g denied (June 14, 1982); *Matarasso* v. *Continental Casualty Co.*, 82 A.D.2d 861, 862 (N.Y. App. Div. 1981), aff'd, 56 N.Y.2d 264 (Ct. App. 1982); *Moser* v. *Liberty Mut. Ins. Co.*, 731 P.2d 406, 410 (Okla. 1989); *Thompson* v. *Grange Ins. Ass'n*, 34 Wash. App. 151, 156-157 (1983). In construing statutory language similar to that of G. L. c. 175, § 113L, these courts have reasoned that the protection contemplated by the UM statute is satisfied by the minimum UM coverage provided in the underlying primary auto policies, and umbrella policies therefore need not provide UM benefits.

Courts in a few other jurisdictions have held that their UM statutes should be construed to include umbrella policies. See *Aetna Casualty & Surety Co.* v. *Green*, 327 So. 2d 65 (Fla. Dist. Ct. App. 1976);[4] *Bartee* v. *R.T.C. Transp., Inc.*, 245 Kan. 499, 515 (1989); *Cincinnati Ins. Co.* v. *Siemens*, 16 Ohio App. 3d 129, 132 (1984). But see *MacKenzie* v. *Empire Ins. Cos.*, 113 Wash. 2d 754 (1989) (no UM coverage available in excess policy, even though UM statute similar to that of Ohio and Louisiana). These courts have based their decisions on statutory language absent from G. L. c. 175, § 113L.[5]

---

[4]Note that Florida and Kansas recently have amended their UM statutes explicitly to provide that umbrella policies are not included. See Florida Stat. § 627.727 (2) (1991); Kansas Stats. Annot. § 40-284 (a) (1991 Supp.).

[5]See, e.g., Ohio Rev. Code Annot. § 3937.18 (1990) (no auto liability policy shall be issued "unless an *equivalent amount* of coverage for bodily injury or death is provided therein or supplemental therefore . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . ." [emphasis added]).

We agree with the judge's declaration that "the [p]ersonal [c]atastrophe [p]olicy does . . . not contain uninsured or underinsured coverage."

*Judgment affirmed.*