677 A.2d 1224

**Leroy KROMER, Jr., Appellant,**

v.

**RELIANCE INSURANCE COMPANY; Federal Insurance Company and Solid Waste Services, Inc., Hoch Sanitation Services, Inc., George J. Balikian.**

**George J. BALIKIAN, Appellant,**

v.

**RELIANCE INSURANCE COMPANY; Federal Insurance Company and Solid Waste Services, Inc., Hoch Sanitation Services, Inc., Leroy Kromer, Jr.**

Superior Court of Pennsylvania.

Argued Jan. 31, 1996.

Filed June 4, 1996.

632

Matthew Kurzweg, Pittsburgh, for Kromer.

Frank J. Madey, Allentown, for Balikian.

John E. Freund, III, Allentown, for Reliance Insurance, appellee.

Michael J. Plevyak, Paoli, for Federal Insurance Company and Solid Waste Services, Inc., and Hoch Sanitation Services, Inc., appellees.

Before CAVANAUGH, EAKIN and OLSZEWSKI, JJ.

CAVANAUGH, Judge.

This is an appeal from a consolidated Declaratory Judgment Action in which the trial court entered a judgment in favor of appellees Reliance Insurance Company and Federal Insurance Company, and against appellants Leroy Kromer, Jr. and George J. Balikian. Appellants argue that Reliance's excess-umbrella policy and Federal's commercial excess policy are "motor vehicle liability insurance policies", as defined by the 1984 Pennsylvania Motor Vehicle Financial Responsibility Law ["PMVFRL"] and, that they therefore, are required to provide uninsured and underinsured motorist coverage in the amount of their stated bodily injury liability coverage. 75 Pa.C.S.A. § 1731(a) (1984). We disagree and affirm.

There was evidence to support the following: Appellants Leroy Kromer and George Balikian were employed by Hoch Sanitation Services, Inc., and both worked as runners on a garbage truck. While working, appellants were struck and injured by a vehicle insured by State Farm Insurance Company. Both appellants settled with State Farm for the limits of coverage under the State Farm policy ($100,000/$300,000).

Hoch Sanitation maintained a business automobile insurance policy with Reliance/Planet Insurance Company which provided uninsured and underinsured motorist coverage with a $1,000,000 liability limit. Both appellants submitted claims

and received compensation, with Balikian receiving $750,000 and Kromer receiving $250,000.

Reliance had also issued an excess-umbrella policy to Hoch Sanitation with a $1,000,000 liability limit. In addition, Federal Insurance Company issued a commercial excess liability policy with an $8,000,000 limit to cover any excess claims above Reliance's excess-umbrella policy. Appellants sought Declaratory Judgment from the Lehigh County Court of Common Pleas that the subject excess-umbrella policies were motor vehicle liability insurance policies as defined by the PMVFRL, and therefore, provided additional underinsured motorist coverage.

Before rendering its decision, the trial court not only recognized that the Pennsylvania appellate courts have not addressed whether umbrella/excess policies provide uninsured/underinsured motorist coverage, but also noted the existing split of authority over this issue. The trial court then concluded that the better rule (which is followed by the majority of jurisdictions and is consistent with the decision of *Electric Insurance Company v. Rubin,* 32 F.3d 814 (3d Cir.1994), which, in turn, predicted how our Supreme Court would decide this issue) is that umbrella and excess liability policies do not provide uninsured/underinsured motorist coverage. Upon reviewing the language of Reliance's umbrella policy and Federal's excess liability policy, and considering the purpose and scope of such policies in general, the trial court concluded that neither policy is a motor vehicle insurance policy within the meaning of the PMVFRL and, therefore, did not provide underinsured motorist coverage. This appeal followed.

Appellants argue that the subject policies are indeed motor vehicle insurance policies and that they are entitled to full recovery as under the terms of any motor vehicle liability policy.

The governing provision states:

(a) General rule.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Common-

wealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).

75 Pa.C.S.A. § 1731(a)(1984).[1] The legislature has not defined "motor vehicle liability insurance" thereby leaving the question open as to whether umbrella or excess liability policies fall within the statute. This issue has not been addressed by the Pennsylvania appellate courts, but has been addressed by other jurisdictions while interpreting similar uninsured/underinsured motorist statutes. Courts in other jurisdictions have come to different conclusions over this issue and have typically based their resolution of the issue on the language of the uninsured/underinsured motorist statute enacted in their state.

Courts that have addressed this issue have often observed that there are generally two (2) types of uninsured/underinsured motorists statutes: "minimum liability" statutes and "full recovery" statutes. The majority of jurisdictions have "minimum liability" statutes which are "intended to protect injured motorists by insuring that they will be able to recover at least an amount equivalent to what would have been available if the insured had been injured by a driver who maintained the *required* statutory minimum liability coverage." *Sidelnik v. American States Insurance Co.*, 914 S.W.2d 689, 693 (Tex.App.1996) (emphasis added). On the other hand, "[f]ull recovery" statutes require insurers to provide uninsured/underinsured motorist coverage equal to the amount of bodily injury liability insurance *that the policy provides*. *Rowe v. Travelers Indemnity Co.*, 245 Mont. 413, 800 P.2d 157, 159 (1990). The often stated policy considerations underlying "full recovery" statutes is to "allow *full*

1. Since the appellants were injured in 1988, the 1984 enactment of the PMVFRL governs this case. In 1990 the Pennsylvania Legislature amended § 1731, making the purchase of uninsured motorist and underinsured motorist coverage optional.

recovery under the terms of any applicable policies when a person is injured by an uninsured motorist." *Continental Insurance Co. v. Howe,* 488 So.2d 917, 919 (Fla.Dist.Ct.App. 1986).

Here, the premise of the appellants' argument is that the Pennsylvania uninsured/underinsured motorist statute is a "full recovery" statute. 75 Pa.C.S.A. § 1731(a) (1984). Appellant argues that unlike "minimum liability" jurisdictions where most courts have refused to include excess and umbrella policies within the definition of a motor vehicle liability insurance policy [2], "full recovery" jurisdictions have ruled that such policies are indeed motor vehicle liability insurance policies, thus providing uninsured/underinsured motorists coverage. To support his argument, appellant cites cases from "full recovery" jurisdictions that have found umbrella and excess liability policies to be within the definition of a motor vehicle liability insurance policy as defined by their respective uninsured/underinsured motorist statutes. *See Southern American Insurance Co. v. Dobson,* 441 So.2d 1185, 1191 (La.1983) (Full recovery statutes reflect the policy "to provide full recovery under the terms of any applicable polic[y] to a person injured, through no fault of his own, by an uninsured or underinsured motorist"); *Ormsbee v. Allstate Insurance Co.,* 176 Ariz. 109, 859 P.2d 732, 735 (1993) (Finding umbrella policy within the statute; "Because the statute links the amount of uninsured/underinsured coverage to the amount of

**2.** Courts in "minimum liability" jurisdictions have generally found, that the minimum level of insurance provided by the underlying policy provided all the the protection contemplated by the statute. *See,* Lisa Kay Gregory, *"Excess" or "Umbrella" Insurance Policy as Providing Coverage for Accidents With Uninsured Motorist Coverage for Accidents With Uninsured or Underinsured Motorists,* 2 ALR 5th 922 (1992). Even where these statutes provide for optional increases in coverage, courts have found that such optional increases only concern the primary automobile policies, not separate excess or umbrella policies. *Id.* at 934. For additional analysis concerning the applicability of umbrella and excess policies, and the comparison between "minimum liability" statutes as compared to "full recovery" statutes. *See Doto v. Russo,* 140 N.J. 544, 659 A.2d 1371 (1995); *Jalas v. State Farm Fire and Casualty Co.,* 505 N.W.2d 811 (Iowa 1993); *Sidelnik,* 914 S.W.2d 689, (Tex.App. 1996); *Archunde v. International Surplus Lines Insurance Co.,* 120 N.M. 724, 905 P.2d 1128 (App.1995).

liability coverage, it makes sense that, as the latter increases, as through umbrella policies, the former must also increase"); *House v. State Auto. Mutual Insurance Co.,* 44 Ohio App.3d 12, 540 N.E.2d 738 (1988)(excess liability policy must comport with full recovery statute as no exception has been made for such policies); *accord, American Economy Insurance Co. v. Canamore,* 114 Or.App. 348, 834 P.2d 542 (1992).

Appellants argue that Reliance's umbrella policy and Federal's excess commercial liability policy are identical in all material respects to the policies addressed in the aforementioned "full recovery" jurisdictions. Appellants point out that these jurisdictions have "full recovery" statutes similar to § 1731 of the PMVFRL; that both Federal and Reliance's policies make reference to automobile coverage; that neither policy specifically excludes uninsured or underinsured motorist coverage; and that Pennsylvania did not statutorily exclude umbrella or excess commercial liability policies from the 1984 PMVFRL, nor did they restrict the phrase "motor vehicle liability insurance policies" to mean only primary coverage. Appellant maintains that, in light of these factors, we should adopt the rule followed by the cited jurisdictions, and find that excess and umbrella policies are motor vehicle liability insurance policies as defined by § 1731(a), and thus required to provide uninsured/underinsured motorist coverage. We disagree, and first look to relevant federal court decisions which we find highly persuasive.

The U.S. District Court for the Eastern District of Pennsylvania and the Third Circuit Court of Appeals have rejected the notion that uninsured and underinsured motorist benefits should be included in umbrella and excess liability policies. In *Electric Insurance Company v. Rubin,* 32 F.3d 814 (3d Cir. 1994), the court held that Electric had no obligation to provide coverage under a personal excess liability insurance policy it had issued to Nathan Rubin for claims made by Patricia Rubin arising from an automobile accident. The application identified the Rubins' two automobiles and included a $2,000,000 liability limit along with a statement indicating that the applicants must have underlying liability policies. Rubin argued

that the excess policy was governed by the PMVFRL and, therefore, coverage could not be excluded. The court rejected appellant's argument, and predicted that our Supreme Court would not hold that an excess policy would be subject to the PMVFRL. The court stated:

> The excess policy in this case simply was not written to satisfy the MVFRL. In fact, inasmuch as the policy required Nathan Rubin to carry underlying liability coverage, it is clear that the excess policy contemplated that Nathan Rubin have some other policy to satisfy MVFRL. In these circumstances, we find nothing in the MVFRL to support the Rubins' claim that the excess policy had to be written with liability coverage conforming to the MVFRL's requirements.

*Id.* at 818–819 (citations omitted).

In *Boyce v. St. Paul Fire and Marine Insurance,* No. CIV. 92–6525, 1993 WL 175371 (E.D.Pa. May 25, 1993), the issue was whether an excess liability policy provided uninsured motorist benefits. The language of the excess policy indicated that it would pay damages the insured is "... legally obligated to pay if ... damages are over the coverage limits of your basic coverage." The basic coverage policy stated that "we'll pay amounts you ... [as the insured] ... are legally entitled to collect from the owner ... of an uninsured vehicle ..." In considering the policy language of the two policies the court found:

> This language shows that in an uninsured motorist accident, the party that is legally required to pay for damages is the uninsured motorist. In this instance, neither the plaintiffs nor the insured is legally required to pay the uninsured benefits under the underlying insurance policy. Since the excess policy only covers excess exposure for the insured or other protected persons, and neither the insured nor the plaintiffs has [sic] excess exposure, the court finds that the excess policy does not provide coverage for uninsured motorists benefits. It is limited to damages that the insured ... [are] "legally required to pay."

*Id.* at 9. Plaintiffs then filed a motion for reconsideration in this case in which they requested the court to reform the excess liability policy so as to provide uninsured motorist coverage as required by § 1731 of the PMVFRL. In its memorandum denying Plaintiffs motion the court reasoned as follows:

> Section 1731 only requires that motor vehicle liability policies contain certain uninsured motorists benefits. Unlike the primary insurance contract which provided uninsured motorist benefits through a motor vehicle insurance policy, the policy in dispute between the parties is not a motor vehicle liability insurance policy. Rather, the policy provides umbrella excess liability coverage. As an excess policy, it provides coverages to a protected person for all types of liability that the protected person may be legally required to pay over and above his or her basic insurance coverage, of whatever type. Therefore, the court will not reform the excess liability insurance policy to provide four million dollars in uninsured motorist coverage since the policy in question is an excess liability policy rather than a motor vehicle liability policy ...

*Boyce v. St. Paul Fire and Marine Insurance Company,* No. CIV. 92–6525, 1993 WL 229961, at *2, (E.D.Pa. June 25, 1993).

In *Stoumen v. Public Service Mutual Insurance Co.,* 834 F.Supp. 140 (E.D.Pa.1993) *affirmed,* 30 F.3d 1488 (1994), plaintiff argued that her personal catastrophe liability umbrella policy constituted a motor vehicle liability insurance policy under § 1731 of the PMVFRL. The plaintiff essentially made the same argument as the appellant makes in the case *sub judice,* namely, that since Pennsylvania is a "full recovery" jurisdiction, our Supreme Court would likely follow those "full recovery" jurisdictions that have held that umbrella and excess liability insurance policies are subject to uninsured/underinsured motorist statutes. In rejecting the plaintiff's argument, the court initially noted that it did "not believe that the type of uninsured motorist statute that a legislature chooses to adopt is dispositive of the issue of whether the legislature also

intends to include umbrella policies within the statutes reach."
*Id.* at 142.

The court then listed important reasons why umbrella policies should be excluded from uninsured/underinsured motorist statutes:

First, umbrella policies insure the policyholder in general, rather than a particular automobile within the state. In fact, not only is it immaterial where the insured's car is kept, car ownership is immaterial. In either case, the insurance company will issue the insured a policy. Thus, the court finds that umbrella policies are not issued "with respect to a[ ] motor vehicle registered or principally garaged in this Commonwealth ..." § 1731(a). Second, umbrella policies' raison d'etre is to provide individuals with affordable protection against excess judgments of third parties, rather than provide individuals with automobile insurance. This fundamental difference is underscored by the difference in premiums that an insurance company charges for the two types of policies. Due to the relative risks associated with each, the premiums that insurance companies charge for umbrella policies are substantially lower than the premiums that insurance companies charge for automobile insurance. Third, the amount of coverage provided by umbrella policies is far greater than coverage provided in the typical automobile insurance policy. Thus, if the Court were to adopt the plaintiff's position, a motorist holding an umbrella policy would actually be better off if he became involved in an accident with an uninsured motorist because he could then submit a claim under his umbrella policy and receive millions of dollars in coverage.

*Id.* at 143 (citations omitted). The court then went on to conclude that the Pennsylvania Supreme Court would hold that umbrella policies are not automobile insurance policies as defined by § 1731 of the PMVFRL.

Despite having a "full recovery" statute, the Connecticut Supreme court has also held that excess and umbrella policies are not motor vehicle liability insurance policies and, therefore, do not provide uninsured or underinsured motorist cover-

age. In *Mass v. U.S. Fidelity and Guaranty Company*, 222 Conn. 631, 610 A.2d 1185 (1992), the court ruled that a personal excess policy was not an automobile liability policy within the meaning of their uninsured/underinsured motorist statute. The court stated "that excess or umbrella policies ... serve a purpose distinct from that served by policies that exclusively cover liability from damages arising out of the ownership, maintenance or operation of an automobile." *Id.*, 610 A.2d at 1190. The court noted that just because the policy covered, among other things, automobile liability that, in itself, did not convert the excess policy into an automobile liability policy within the meaning of the statute. *Id.* The court found that the language of the policy indicates that it was intended solely to protect the insureds from an infrequent risk of catastrophic loss in the form of excess judgments rendered against them. *Id.* Additionally, the policy did not expressly refer to uninsured motorist coverage, and the fact that it did not expressly exclude uninsured motorist coverage did not make it ambiguous.

Moreover, in response to plaintiff's argument concerning Connecticut being a "full recovery" statute, the court held that the type of uninsured motorists statute enacted, whether it offers "full recovery" or "minimum recovery", is not dispositive of the question presented. *Id.*, 610 A.2d at 1194 note 16. The plaintiffs were compensated in an amount equal to the liability limits under the automobile insurance policy. As such, the court ruled that the plaintiffs "received the full protection contemplated by the statute when they purchased the underlying automobile liability policy." *Id.* at 1194.

Similarly, the New Hampshire Supreme Court, despite having a full recovery statute, also ruled that umbrella policies do not fit the legislative definition of a motor vehicle liability policy. In *United Services Automobile Association v. Wilkinson*, 132 N.H. 439, 569 A.2d 749 (1989), the court also concluded that umbrella policies are distinguishable from motor vehicle liability policies for purposes of uninsured motorist coverage. The court recognized the legislature's intention to provide uninsured motorist coverage equal to the amount of

motor vehicle liability coverage purchased, however, the court stated that it cannot "assume the legislature intended this requirement to apply to whatever form the coverage takes. If the legislature desires uninsured motorist coverage to equal liability coverage from any source, including umbrella-type policies, it may amend the statute accordingly." *Id.*, 569 A.2d at 755.

At least one commentator agrees that umbrella policies are indeed unique and distinguishable from general automobile policies.

> Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. Assuming one's automobile and homeowners policies have liability limits of $100,000 or even $500,000, the umbrella policy may pick up at that point and cover for an additional million, five or ten million. It may assume as a primary carrier certain coverages not included elsewhere, *... but there is no intention to supplant the basic carriers on the homeowners or automobile coverages.... However, because of the misunderstanding of the courts as to the nature of such coverages, they have been held to fall within the definition of automobile liability insurance.*

J.A. Appleman & J. Appleman, *Insurance Law and Practice,* § 5071.65, P. 107 (1981) (footnotes omitted) (emphasis added).

█ We must also reject appellant's incantation that the PMVFRL was intended to afford the "greatest possible coverage to insured and injured claimants." This overly generous reading of the Act's intentions harkens back to the now defunct No-fault Act with its "maximum feasible restoration" language which no longer controls. *Jeffrey v. Erie Ins. Exchange,* 423 Pa.Super. 483, 621 A.2d 635 (1993), *allocatur denied* 537 Pa. 651, 644 A.2d 736 (1994); *Frazier v. State Farm,* 445 Pa.Super. 218, 665 A.2d 1 (1995).

█ Having this discussion in mind, we will now focus upon the language of Reliance's umbrella policy as well as Federal's commercial excess liability policy. "In interpreting

an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give affect to the language of the contract." *Paylor v. Hartford Insurance Co.*, 536 Pa. 583, 586, 640 A.2d 1234, 1235, (1994). Reliance's excess umbrella policy provides coverage for comprehensive general liability, automotive liability, employers' liability as follows:

I. Coverage. The company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to pay on behalf of the insured all sums which the insured shall be obligated to pay by reason of the liability

(a) imposed upon the insured by law, or

(b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured, while acting in his capacity as such, for ultimate net loss on account of:

(a) personal injuries, including death at any time resulting therefrom,

(b) property damage,

(c) advertising liability, caused by or arising out of each occurrence happening anywhere during the policy period.

Federal's Commercial Excess Liability Policy provides that Federal agreed:

to pay on behalf of the insured loss resulting from an occurrence insured by all of the policies scheduled in . . . the Declarations.

Federal's Commercial Excess Liability Policy also provided that "loss" means in pertinent part:

all sums actually paid or sums which the insured is legally obligated to pay in the settlement or satisfaction of a claim . . .

Neither of the above policies express any intention of providing first party underinsured motorist coverage. In fact, it is clear from the language of both policies that they provide

third party liability coverage only.[3]  This is evident from the phrase used in both policies: "to pay on behalf of the insured ... sums which the insured is legally obligated to pay".  Here, the appellee Hoch is obviously the insured.  Reliance and Federal's obligation as insurers of Hoch, is to pay on the part of Hoch, sums Hoch is legally obligated to pay to third parties. As the trial court properly concluded "[t]he underinsured motorists claims of [appellants] do not constitute sums which the insured is legally obligated to pay nor are they payments made on behalf of the insured."  Here, appellants, who are employees of Hoch, are making a claim for first party underinsured motorist coverage under Reliance's Umbrella Policy and Federal's Commercial Excess Policy when the language of both clearly indicates that no such coverage exist.  Coverage under Federal's and Reliance's excess policies is only triggered by claims of liability against the insured from third parties.  Such coverage is not triggered by claims for first party uninsured motorist coverage.  Accordingly, we find that neither of the subject excess insurance policies provide underinsured motorist coverage.  *See Liberty Mutual Insurance Company v. McLaughlin,* 412 Mass. 492, 590 N.E.2d 679 (1992) (clear language of policy protects from excess judgment against an insured;  does not provide uninsured motorists coverage); *Cincinnati Insurance Company v. Miller,* 190 Ill.App.3d 240, 137 Ill.Dec. 755, 546 N.E.2d 700 (1989) ("liability" in excess policy refers to liability for losses to persons other than the insured); *Matarasso v. Continental Casualty Company,* 82 A.D.2d 861, 440 N.Y.S.2d 40 (1981), *affirmed* 56

---

**3.** An insurance expert testified at trial and succinctly explained the difference between a liability insurance coverage and underinsured/uninsured motorist coverage:

> A liability policy is commonly known and referred to as a[sic] third party coverage.  There are three parties, the insurance company; the insured and the claimant. . . .  [I]f the insured is liable for whatever is claimed, the insurance company will pay on behalf of the insured to the claimant the damages sought up to the liability limits. . . .  [U]ninsured/underinsured motorist coverage is not liability coverage in that it's [ ] first party coverage.  It deals between the insurance company and the insured, and the insurance company agrees to reimburse or to pay the insured, what the insured is entitled to because of damages it sustained by some negligent tortfeasor.

Trial Transcript at 35–36, 10/26/94.

N.Y.2d 264, 451 N.Y.S.2d 703, 436 N.E.2d 1305 (1982) (umbrella policy protects against claims from third parties; "[t]he uninsured motorist coverage provided by the underlying automobile policy does not involve claims of liability against the insured from third parties and is not incorporated by the umbrella policy").

■   Moreover, we reject appellants' invitation to follow those jurisdictions with "full recovery" statutes who have bootstrapped excess and umbrella policies to their respective uninsured/underinsured motorist statutes under the guise of carrying out the legislatures intent of allowing "full recovery under the terms of any applicable policies when a person is injured by an uninsured motorist." *Howe,* 488 So.2d 917, 919 (Fla.App. 3 Dist.1986). We are in accord with those courts that have determined that the form of uninsured/underinsured motorist statute that a legislature chooses to adopt is not *ipso facto* dispositive of whether or not umbrella or excess policies provide uninsured or underinsured motorist benefits.[4]   *See Stoumen,* 834 F.Supp. 140 (E.D.Pa.1993); *Mass,* 222 Conn. 631, 610 A.2d 1185 (1992); *Rowe,* 245 Mont. 413, 800 P.2d 157 (1990); *MacKenzie v. Empire Insurance Cos.,* 113 Wash.2d 754, 782 P.2d 1063 (1989). In any event, appellants settled for the full limits of liability under Hoch's business automobile policy issued by Reliance which provided underinsured motorist coverage. As such, appellants received the full protection contemplated by the statute when they were compensated by Hoch's underlying automobile policy. *See Mass,* 222 Conn. 631, 610 A.2d 1185 (1992). Furthermore, the Umbrella and Commercial Excess Policies were simply not written to satisfy § 1731 of the PMVFRL. Unlike uninsured/underinsured automobile insurance, Federal's Commercial Excess Policy and Reliance's Umbrella policy provide third party coverage to

---

**4.** In Both Florida and Kansas, umbrella policies were held to be subject to their uninsured motorist statutes mainly because their statutes were of the "full recovery" type. *See e.g., Chicago Insurance Co. v. Dominguez,* 420 So.2d 882 (Fla.App.1982) *review denied,* 430 So.2d 450 (Fla.1983); *Bartee v. R.T.C. Transportation, Inc.,* 245 Kan. 499, 781 P.2d 1084 (1989). After these cases were decided, the legislatures in both states amended their uninsured motorist statutes for the sole purpose of excluding umbrella policies.

protect against infrequent risks of catastrophic loss in the form of excess judgments rendered against them. Therefore, Reliance's umbrella policy and Federal's Commercial's excess liability insurance policies are not motor vehicle liability insurance policies as defined by § 1731 of the PMVFRL.

We find no merit to appellants next argument that the policies are arguably ambiguous. We have reviewed the policies and have concluded that there is no language which would suggest an intent to provide underinsured motorist coverage. Nor do we find language which would permit the imposition of added coverage to the contract.

■ Finally, appellants argue that the Doctrine of Reasonable Expectations mandates that the insurance policies be construed in favor of the insured. When considering issues of coverage under insurance contracts the proper focus is the reasonable expectation of the insured. *St. Paul Mercury Ins. Co. v. Corbett,* 428 Pa.Super. 54, 59, 630 A.2d 28, 30 (1993). "However, while reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous". *Id.* (citations omitted). As we have already stated, the policies were indeed clear and unambiguous, and gave no indication of providing first party underinsured motorists coverage. Therefore, appellants' final claim is meritless.

Order Affirmed.