**Superka v. Valley Forge Life Insurance Co.**

C.P. of Lehigh County, no. 98-C-1962.

*Richard J. Orloski,* for plaintiff.
*Jason K. Cohen,* for defendant Valley Forge Life Ins. Co.
*Georgine A. Olexa,* for defendant Hoffrichter.

BLACK, *J.,* November 29, 1999—Plaintiff, John M. Superka, seeks to recover the proceeds of a $250,000 life insurance policy purchased by his late wife, Patricia Superka, from defendant Valley Forge Life Insurance Company. Mrs. Superka died of leukemia within the two-year contestability period. After her death Valley Forge cancelled the policy and refunded the premium payments on the ground that her health at the time the policy was delivered was not as represented in the application for insurance.

Plaintiff's complaint is against both Valley Forge and its soliciting agent, Donald S. Hoffrichter. The claims against Valley Forge are set forth in five counts, the first two for breach of contract and the remaining three for vicarious liability based on alleged wrongful conduct of Hoffrichter. The claims against Hoffrichter are contained in three counts for negligence, detrimental reliance, and negligent misrepresentation.

Before the court is the motion of Valley Forge for summary judgment in its favor on all counts of the complaint. Valley Forge contends that there was no breach of contract because the company properly cancelled the insurance policy upon discovering that Mrs. Superka had been diagnosed with leukemia before the policy was delivered to her. Valley Forge also contends that it is not liable vicariously for the purported wrongful acts of Hoffrichter.

The Pennsylvania Rules of Civil Procedure provide for the entry of summary judgment "if after completion of discovery relevant to the motion, . . . an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issue to be presented to a jury." Pa.R.C.P. 1035.2(2).

In order to defeat a motion for summary judgment, the non-moving party must show by depositions, answers to interrogatories, admissions or affidavits that a genuine issue of material fact exists for trial. *Overly v. Kass,* 382 Pa. Super. 108, 111-12, 554 A.2d 970, 972 (1989). The non-moving party may not rely on controverted allegations of the pleadings. *Phaff v. Gerner,* 451 Pa. 146, 149, 303 A.2d 826, 829 (1973). Moreover, "unsupported assertions of conclusory allegations cannot create genu-

ine issues of material fact." *McCain v. Pennbank*, 379 Pa. Super. 313, 318-19, 549 A.2d 1311, 1313-14 (1988).

On the other hand, the record must be viewed in the light most favorable to the non-moving party, and all doubts must be resolved against the party seeking summary judgment. *Ertel v. Patriot-News Co.*, 544 Pa. 93, 98-99, 674 A.2d 1038, 1041 (1996). Summary judgment is to be granted only "where it is clear and free from doubt." *Sebelin v. Yamaha Motor Corp.*, 705 A.2d 904, 907 (Pa. Super. 1998). Furthermore, summary judgment may not be entered on the basis of testimony by affidavit or deposition of the moving party or a witness on such party's behalf, even if the testimony is uncontradicted, since the credibility of witnesses must be determined by the fact-finder. See note to Pa.R.C.P. 1035.2, citing *Nanty-Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932), and *Penn Center House Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989).

Applying the foregoing principles, we conclude that Valley Forge is not entitled to summary judgment on the breach of contract claims in Counts I and II of the complaint, but that judgment should be entered in favor of Valley Forge as a matter of law on the vicarious liability claims in Counts III, IV and V.

## FACTS[1]

Hoffrichter was engaged in business as a financial advisor. In the course of his business he often assisted his clients in obtaining life insurance. He was an authorized soliciting agent for a number of life insurance com-

---

1. We have examined the record in the light most favorable to plaintiff and have given plaintiff the benefit of all reasonable inferences. See *Electronic Laboratory Supply Co. v. Cullen*, 712 A.2d 304 (Pa. Super. 1998).

panies, including Valley Forge. His agency contract with Valley Forge authorized him to "solicit and process . . . applications . . ., to collect initial premiums and to deliver policies and premium receipts." (Plaintiff's complaint, exhibit "A," soliciting agent commission agreement.) However, Hoffrichter had no authority to bind Valley Forge to coverage, and he had no authority to alter any of the policy terms. *Id.*

Hoffrichter met Mr. and Mrs. Superka through a direct mail solicitation that he had sent to targeted zip codes advertising his services. Mr. and Mrs. Superka responded to this solicitation in January 1996. Mr. Superka was "eager" to meet with Hoffrichter in order to "learn more about investment" and also "to re-examine and look at our insurance policies." (Deposition of John M. Superka, 1/7/99, at 21.) In the ensuing months, Hoffrichter met with Superkas on several occasions to discuss both their current insurance portfolios as well their desired insurance goals. (Superka dep. at 23.) At these meetings Hoffrichter reviewed with Mr. and Mrs. Superka the terms and prices of various insurance policies and arranged for both of them to sign life insurance applications for policies with several companies. Hoffrichter submitted some of these applications on their behalf.

At one of their meetings, Hoffrichter suggested to Mrs. Superka that she should apply to Valley Forge for life insurance. On June 14, 1996, Hoffrichter assisted Mrs. Superka in completing an application to Valley Forge for a $250,000 policy on her life. The policy was intended to replace Mrs. Superka's existing $250,000 policy with First Colony. Mr. Superka offered to submit the initial premium with the application, but Hoffrichter

told him that this was not necessary.[2] (Superka dep. at 41-42.) Hoffrichter's advice was that they should hold off on sending in the initial premium payment until Valley Forge approved and issued the policy. Only when that occurred would the existing First Colony policy be canceled. According to Hoffrichter, if the Valley Forge premium was sent in before the First Colony policy was canceled, then two premiums would be tied up to achieve the intended coverage of $250,000.

The language of the Valley Forge application immediately preceding Mrs. Superka's signature stated:

"[I]f no premium has been given to the agent with this application, insurance will not take effect until the application is approved and accepted by the company . . . and the policy is delivered while the health of each person proposed for insurance and other conditions remain as described in this application and at least . . . the first premium has been paid in full." (Defendant's motion for summary judgment, exhibit "H," Valley Forge insurance application.) The application also provided that, if accepted by the company, the application and the policy would "constitute the entire insurance contract." *Id.*

Shortly thereafter, Valley Forge approved the application, and on July 1, 1996, issued a policy of insurance on Mrs. Superka's life in the amount of $250,000. The policy had a two-year contestability provision. Attached to the policy was the application for insurance that Mrs. Superka had signed and completed with Hoffrichter's assistance.

---

2. There is a factual dispute as to whether Mr. Superka offered to pay the premium at this time. Hoffrichter maintains that Mr. Superka did not make such an offer. Mr. Superka claims that he did. For purposes of this summary judgment motion, we must accept Mr. Superka's version of what occurred and make all reasonable inferences in his favor. See *Electronic Laboratory Supply v. Cullen, supra.*

The policy itself specifically provided that "[n]o one has the right to change any part of this policy or to waive any of its provisions unless the change is approved in writing on the policy by one of our officers." (Defendant's motion for summary judgment, exhibit "I," Valley Forge insurance policy at section 3.12.)

On July 2, 1996, Mrs. Superka visited a doctor with complaints of congestion and was diagnosed with chronic myelogenous leukemia. As of this date, Mr. and Mrs. Superka had not yet made any premium payment to Valley Forge. Within a few days after this diagnosis, Mr. or Mrs. Superka notified Hoffrichter of Mrs. Superka's medical problem by telephone. Approximately two weeks later Mr. Superka mailed a check dated July 11, 1996 to Hoffrichter for the initial premium payment. Included with the check was a note dated June 14, 1996, in which Mr. Superka asked for Hoffrichter's advice regarding cancellation of the existing First Colony policy on Mrs. Superka's life. The note stated:

"Enclosed is the payment requested made out to CNA[3] for Pat's term insurance coverage. In light of the recent situation I'm not sure I want to or should cancel First Colony at this point in time. *Please advise me. Thanks!*" (Defendant's motion for summary judgment, exhibit "J," Superka note to Hoffrichter.) (emphasis in original)

The record is not clear as to what advice Hoffrichter gave in response to this request. However, what is clear is that Mr. and Mrs. Superka decided to keep the First Colony policy in place, and at the same time to continue to pursue coverage from Valley Forge. Towards that end, on July 14, 1996, Hoffrichter submitted an addendum to the Valley Forge insurance application indicating that

---

3. CNA is the parent company of Valley Forge.

Mrs. Superka would no longer be replacing an existing policy. Neither Hoffrichter nor the Superkas informed Valley Forge of Mrs. Superka's recent diagnosis. Valley Forge received Mr. Superka's check for the initial premium payment from Hoffrichter on or about July 18, 1996. At some point in time Hoffrichter received the Valley Forge policy from Valley Forge and then delivered it to Mrs. Superka.

Mr. Superka continued to make the premium payments on the Valley Forge policy until Mrs. Superka's death on October 2, 1997. Since her death occurred within the two-year contestability period, Valley Forge began an investigation into the circumstances surrounding the issuance of the policy. Following this investigation, on March 13, 1998, Valley Forge sent a notice to Mr. Superka stating:

"Due to the change in the health of the proposed insured prior to the delivery of the policy and the first premium paid . . . this policy is void as of its intended effective date." (Defendant's motion for summary judgment, exhibit "N," Valley Forge letter to Superka.) Valley Forge then returned to Mr. Superka all the premiums that had been paid on the policy.

## DISCUSSION

### I. *The Breach of Contract Claims*

The rules for interpreting an insurance contract are well-established.

"In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give affect to

the language of the contract." *Kromer v. Reliance Insurance Co.,* 450 Pa. Super. 631, 642-43, 677 A.2d 1224, 1230 (1996) (quoting *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 586, 640 A.2d 1234, 1235 (1994)), *allocatur granted,* 546 Pa. 655, 684 A.2d 557 (1996), *aff'd,* 548 Pa. 209, 696 A.2d 152 (1997). An insured is presumed to know the terms of the insurance contract he or she enters into. See *Blue Ridge Textile Co. v. Travelers Indemnity Co.,* 407 Pa. 463, 181 A.2d 295 (1962) (affirming judgment on en banc opinion of Northampton County Common Pleas Court at 27 D.&C.2d 55 (1962)). When the contract clearly and unambiguously sets forth a condition precedent to the effectiveness of the policy, the insured's failure to comply with the condition renders the policy void. *Id.*

The insurance application submitted by Mrs. Superka, which was expressly incorporated into the policy itself, sets forth three conditions precedent to the policy taking effect: (1) the home office must approve and accept the policy, (2) the policy must be delivered while the applicant's health remains as described in the application and (3) the initial premium payment must be paid. In its motion for summary judgment, Valley Forge argues that the policy is void because Mrs. Superka's health changed before the payment of her first premium. However, although it is undisputed that the first premium payment was not made until after the July 2, 1996 diagnosis of leukemia, the language of the application does not support summary judgment on this basis. The relevant date regarding Mrs. Superka's health is not the date the initial premium payment was made, but rather the date when the policy of insurance was delivered to her.

Clearly, from July 2, 1996, and thereafter, Mrs. Superka's health was not as described in the application.

However, the record is not sufficient to establish, for summary judgment purposes, the date when delivery of the policy occurred. Valley Forge refers to the deposition testimony of Hoffrichter in which he states that he sent the policy to the Superkas on July 11, 1996. However, under *Nanty-Glo* and its progeny, Valley Forge may not rely on Hoffrichter's deposition testimony to sustain its motion for summary judgment. Mr. Superka, the non-moving party, is entitled to have Hoffrichter's credibility assessed by a jury. In a supplemental brief, Valley Forge attempts to satisfy the *Nanty-Glo* rule by referring to a policy receipt allegedly signed by Mrs. Superka on July 11, 1996, purporting to acknowledge delivery of the policy on that date. However, this document, which is attached as an exhibit to the supplemental brief, is not self-authenticating, and Valley Forge has not produced any competent evidence by affidavit, deposition or otherwise to establish that the document is what it purports to be. In the absence of authenticating evidence, we may not consider this document.

Consequently, an issue of fact remains as to when delivery of the policy occurred. In view of this factual issue, summary judgment cannot be granted on the breach of contract claims in Counts I and II of the complaint.[4]

---

4. Mr. Superka also contends that Hoffrichter waived the health condition on behalf of Valley Forge. This argument is not persuasive. Clearly, Hoffrichter had no authority to do so. Nor did he have apparent authority, since the policy expressly stated that its provisions could be altered only in writing on the policy by an officer of the company. Thus, Mrs. Superka was on notice of the limitation of Hoffrichter's authority and is bound by that limitation. See *Sabino v. Junio,* 441 Pa. 222, 225, 272 A.2d 508, 510 (1971); see also, Restatement (Second) of Agency §166.

Mr. Superka states that Hoffrichter's knowledge of his wife's medical condition should be imputed to Valley Forge, and that Valley Forge's

## II. *The Claims of Vicarious Liability*

In Counts III, IV and V of the complaint, Mrs. Superka asserts claims of vicarious liability against Valley Forge based on the conduct of its agent, Hoffrichter. The theories of liability in these counts overlap to some extent. The claims all arise from the advice allegedly given by Hoffrichter to Mr. and Mrs. Superka regarding the initial premium payment. It is clear from the averments in these counts and the depositions and accompanying exhibits that Mrs. Superka cannot prevail on any of these theories.

Count III alleges that Hoffrichter was negligent "in failing to secure the initial payment until July 18, 1996." (Complaint, ¶24.) According to the complaint, Mr. Superka was ready, willing and able to make payment of the premium on June 14, 1996, when the application was completed, but was told by Hoffrichter that payment was not necessary at that time. (Complaint, ¶6.) Mr. Superka asserts that Hoffrichter was negligent in giving such advice, and that Valley Forge is liable for Hoffrichter's negligence under principles of respondeat superior. How-

---

issuance of the policy with this knowledge constituted a waiver of the health provision. However, where an insurance broker represents both the insured and the insurer in certain respects, as here, the concept of imputed knowledge cuts both ways. Just as Mr. Superka argues that Hoffrichter's knowledge should be imputed to Valley Forge, it could just as easily be argued that Hoffrichter's knowledge of his lack of authority to waive any provisions of the policy should be imputed to Mrs. Superka. Where an agent serves in a dual role, representing multiple parties, the concept of imputed knowledge is of limited applicability. See *Youngblood v. Prudential Insurance Co. of America*, 109 Pa. Super. 20, 165 A. 666 (1933) (insurance agent's knowledge of condition not imputed to insurer when the agent was merely a soliciting agent and the policy provided that its terms could not be altered without approval of an officer of the company).

ever, under the circumstances of this case, such a theory is not viable.

As Mr. Superka acknowledges in his brief, Hoffrichter was acting partly as agent for Valley Forge and partly as agent for Mr. and Mrs. Superka in the transaction.[5] In certain respects, *i.e.,* soliciting and processing the application, collecting the initial premium, and delivering the policy, Hoffrichter was expressly authorized to act for Valley Forge. However, in other respects such as advising Mr. and Mrs. Superka which policies to apply for, when to cancel the First Colony policy, and when to tender the premium payment to Valley Forge, he was acting on behalf of the Superkas, since the purpose and rationale of this advice was to serve the best interests of the Superkas. Mr. Superka himself testified in his deposition that he considered Hoffrichter their insurance and financial advisor, and that he viewed Hoffrichter as acting as their broker and agent. (Superka dep. at 76-77.)

Mr. Superka now contends that since Valley Forge authorized Hoffrichter to collect the initial premium payment, any advice Hoffrichter gave regarding the premium payment was in his capacity as agent for Valley Forge. The conclusion does not follow from the premise. The mere authorization to collect a premium does not carry

---

5. The cases describing the relationship between an insured and an insurance agent are mixed. In *Taylor v. Crowe,* 444 Pa. 471, 282 A.2d 682 (1971), the Supreme Court held that where the agent, not the insured, was the one who actually selected the insurance company, the agent was a broker and therefore the agent of the insured. See also, *Kairys v. Aetna Casualty and Surety Company,* 314 Pa. Super. 502, 461 A.2d 269 (1983). On the other hand, in *Sands v. Granite Mutual Insurance Co.,* 232 Pa. Super. 70, 331 A.2d 711 (1974), the insurance agent was found to have authority to bind the company. The reality of these situations is that, depending on the particular facts, an agent may be acting on behalf of both parties. In some respects he may act for the insured, and in other respects he may act for the company.

with it authorization to give advice to an insured as to when it is in the insured's best interests to submit the premium payment. In giving such advice, Hoffrichter was acting not for Valley Forge, but for the Superkas, in accordance with his advisory relationship with them. Therefore, Count III must be dismissed.

Count IV uses language of promissory estoppel in stating that Hoffrichter "specifically informed plaintiff that said insurance coverage would be in effect immediately, and the plaintiff need not tender the check at that time (June 14, 1996)" (complaint, ¶30), and that plaintiff relied on this representation of coverage. This theory likewise cannot be sustained because the application completed by Mrs. Superka expressly stated that the insurance would not take effect until the premium was paid; and the insurance policy itself, which incorporated this provision, expressly stated that no provision could be waived except by a change approved in writing on the policy by a company officer. Therefore, even if it were to be established at trial that Hoffrichter had made such a representation of coverage, Mrs. Superka is presumed to know of the limits of his authority because of the explicit language in the application and policy. See *Sabino v. Junio,* 441 Pa. 222, 225, 272 A.2d 508, 510 (1971) (employee of car rental company leased vehicle with knowledge it would be driven by a minor; minor knew that employee had no authority to rent to a minor; held rental company and its insurer not estopped from denying coverage); see also, Restatement (Second) of Agency §166 ("A person with notice of a limitation of an agent's authority cannot subject the principal to liability upon a transaction with the agent if he should know that the agent is acting improperly.").

Moreover, there is no factual support for this theory in the record. Mr. Superka in his deposition did not claim that there had been a misrepresentation of coverage. He testified that the reason the premium was not paid initially was that the Valley Forge policy was intended to replace his wife's existing First Colony policy, and that on Hoffrichter's advice he did not want to tie up two premiums when he and his wife wanted coverage under only one $250,000 policy. It was Mrs. Superka's original intention to cancel the First Colony policy as soon as Valley Forge accepted her application for the replacement insurance. (Superka dep. at 57.) Thus, according to Mr. Superka's own deposition, the reason he did not immediately send in the premium payment on June 14, 1996 was not because of assurances by Hoffrichter that there was immediate coverage without this payment, but rather because he wanted to avoid having two premiums tied up for the desired coverage.

Count V is similar to Count IV in that it is predicated on an allegation that Hoffrichter "supplied false information for plaintiff's guidance" (complaint, ¶36), and that plaintiff reasonably relied on this information by delaying the initial premium payment. Again, even if it were to be established at trial that Hoffrichter was negligent in informing Mr. and Mrs. Superka that there would be immediate coverage without payment of the premium, Mrs. Superka could not have reasonably relied on this information since it was directly contradicted by the language in the policy application. Furthermore, as noted above, Mr. Superka's deposition provides a different rationale for the payment delay, *i.e.,* a desire to avoid having two premiums tied up for the desired coverage.

For these reasons, Counts III, IV and V of the complaint must be dismissed.

## ORDER

Now, November 29, 1999, in consideration of the motion of defendant Valley Forge Life Insurance Company for summary judgment and the plaintiff's response thereto, after oral argument and for the reasons set forth in the accompanying opinion, it is ordered that said motion is granted in part and denied in part as follows:

(1) With respect to Counts III, IV and V of the plaintiff's complaint, the motion for summary judgment is granted, and judgment is hereby entered in favor of defendant Valley Forge Life Insurance Company and against plaintiff on those counts of the complaint.

(2) With respect to Counts I and II of the complaint, the motion for summary judgment is denied.