**TRANSCORE, LP, f/k/a Transcore, Inc., Transcore Holdings, Inc., and Amtech Systems, LLC, f/k/a Amtech Systems Corporation, Appellees**

v.

**CALIBER ONE INDEMNITY COMPANY, PMA Reinsurance Corporation and PMA Capital Corporation, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 27, 2009.

Filed April 27, 2009.

Reargument Denied June 30, 2009.

William F. Stewart, West Conshohocken, for appellants.

Louis H. Kozloff, Philadelphia, for appellees.

BEFORE: KLEIN, SHOGAN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 In this declaratory judgment action, Caliber One Indemnity Company (Caliber) appeals from the judgment ordering it to reimburse TransCore, LP, F/K/A Trans-Core, Inc., TransCore Holdings, Inc, and Amtech Systems, LLC, F/K/A Amtech Systems Corporation (Amtech)[1] $822,981.95 for legal fees Amtech incurred in defending itself against a patent infringement claim brought not by a customer, but by another vendor. The insurance policy issued by Caliber covered, in relevant part, professional liability. For two reasons, we reverse and direct that judgment be entered in Caliber's favor. First, because we find that a patent infringement action brought by another vendor is not a "professional liability" action under the terms of the policy. Second, this is an action for inducing a third party to violate a patent, not a direct patent infringement action. Because that patent action can only be brought if the violation is knowing, and there is an exclusion in the policy for "knowing" actions, there is no coverage for this action.

**Background**

¶ 2 Amtech supplied and installed[2] transponders and readers that are used to automatically record and bill highway tolls in an E–Z Pass type system. In the underlying action, X–Cyte sued Amtech for patent infringement, alleging that Amtech induced others into patent infringement by

---

1. Amtech is a subsidiary of TransCore, LP, and it appears to have been the major target in the underlying patent infringement suit, so we will refer to both entities as Amtech.

2. In the underlying action, Amtech was accused of specifically installing the system on a particular bridge. It was later discovered that Amtech did not install that system. However, it appears that Amtech did install other, non-specified, systems.

installing the infringing technology. *See* Complaint, 3/21/01, at ¶ 7.[3] The claim was subsequently presented to Caliber with a request to defend and, if necessary, indemnify Amtech. Caliber declined coverage. Amtech then hired its own counsel and defended the action, ultimately winning the underlying lawsuit. Amtech then filed this declaratory judgment action, claiming Caliber improperly declined coverage and seeking reimbursement for its legal fees.

¶ 3 The trial court determined that under *Mendenhall v. Astec Indus.*, 14 U.S.P.Q.2d 1134, 1988 WL 193214 (E.D.Tenn.1988), installation and instruction on use constitutes inducing infringement under the Patent Act, 35 U.S.C. § 271(b).[4] The trial court further reasoned that the policy required coverage for "any act ... in the rendering of professional services." Caliber One Insurance Policy, 9/3/00, Coverage P(1)(A), at 11. The trial court also noted that the policy contained no specific exclusion for a patent infringement claim. Without specific analysis, the trial court determined that installation was a professional service and therefore the claim required coverage.

## Discussion

### 1. A Patent Infringement Action brought by a Third Party is not Professional Liability.

■ ¶ 4 We begin by noting that a professional liability insurance policy is not designed for claims brought by third parties, such as contract or patent infringement claims. Professional liability typically encompasses those claims made by entities that have a professional relationship with the insured. Thus, if a company doing business with Amtech suffered a loss because it could not use or needed to replace equipment supplied by Amtech because of a determination that the Amtech technology infringed upon a patent, that claim may be covered by professional liability. In this hypothetical situation, Amtech and the buyer have a professional relationship. In the matter before us, however, Amtech and X–Cyte had no relationship whatsoever. It would seem

---

3. The underlying complaint also charged infringement when Amtech sold the allegedly infringing technology. Selling infringing technology is a direct infringement under 35 U.S.C. § 271(a). The trial court and both parties agree that selling the technology is not covered by the policy in question because selling is not a professional service.

4. Both the underlying complaint and the complaint for declaratory judgment are vague in describing what actions constituted direct infringement as opposed to induced infringement. Selling infringing technology is a direct infringement under section 271(a). The trial court determined under Mendenhall that installing the technology was inducement under section 271(b). Selling infringing technology that is part of a patented process is contributory infringement under section 271(c). This court is no authority on patent law, but our reading of Mendenhall indicates that the installation referred to by the trial court below may have actually been a violation under section 271(c) rather than section 271(b). *See Mendenhall* at *1. We are at something of a loss in this matter because none of the parties has taken the time to explain the significance of the underlying federal laws. Nonetheless, because the trial court analyzed this issue as installation constituting an example of inducement, we are reviewing it in that light.

It would seem logical that if an independent installing company intentionally directed a customer to use infringing technology or if the independent company simply knowingly installed infringing technology, that would be an example of a violation of section 271(b). It seems strange that section 271(b) would apply for the developer or manufacturer of infringing technology as applied to installation where section 271(a) would seem to cover the same action for selling the technology. This is especially true where a violation of section 271(a) does not require a showing of intent or knowledge. However, none of the parties is challenging the notion that installation represents an inducement.

self-evident that professional liability insurance is designed to cover those actions undertaken and losses incurred within a professional relationship. In the same way a plaintiff cannot convert a general liability policy into a performance bond or to cover a breech of contract claim, *see Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581 (1996)(*en banc*), a plaintiff should not convert a professional liability policy into a patent infringement policy.[5]

¶ 5 The concept of converting one type of insurance into another is generally frowned upon in this Commonwealth. Often, this type of improper conversion is found in automobile coverage. Other examples include: *Bombar v. West American Ins. Co.*, 932 A.2d 78 (Pa.Super.2007) (may not convert underinsured motorist coverage into liability coverage); *Kromer v. Reliance Ins. Co.*, 450 Pa.Super. 631, 677 A.2d 1224 (1996) (may not convert excess umbrella coverage into uninsured motorist coverage); and *Hart v. Nationwide Ins. Co.*, 541 Pa. 419, 663 A.2d 682 (1995) (may not convert underinsured or uninsured motorist coverage into liability coverage).

¶ 6 Our decision today rests on more than the oft affirmed notion that one type of insurance should not be converted into another type of available coverage. The trial court noted that there is no specific exclusion for patent infringement. While it is true that the words "patent infringement" do not appear in any exclusion found in the policy that does not mean that a patent infringement claim is not excluded any more than a contract claim with a supplier who needs to provide an element to be used in the installation of the E–Z Pass-type system.

## 2. The only Patent Infringement Act Violation Claimed is for Knowingly Inducing Another to Violate the Patent, and the Policy Contains an Exclusion for Knowing Acts.

■ ¶ 7 It is beyond debate that a patent infringement claim represents an allegation that the Patent Act has been violated. Specifically, patent infringements are, in relevant part, found at 35 U.S.C. § 271. Thus, a claim of patent infringement is a claim that federal law has been violated. Exclusion D of the policy in question denies coverage to "[a]ny claims arising out of knowingly non complying with federal, state and local statutes."

¶ 8 Here, the claim at issue on this appeal is that Caliber owed Amtech coverage over the allegation that it induced another party into patent infringement. Inducement of patent infringement is a specific violation of the Patent Act found at 35 U.S.C. § 271(b), which simply states: "whoever actively induces infringement of a patent shall be liable as an infringer." As the word "induces" implies and the federal courts confirm, a violation of section 271(b) is an intentional act.

> "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Inducement, unlike direct infringement, is a *specific intent tort.* A person only commits it if it *intends* for another to infringe the plaintiff's patent.

*Gammino v. Cellco Partnership*, 527 F.Supp.2d 395, 399 (E.D.Pa.2007)(case citations omitted)(emphasis added).

¶ 9 Thus, the patent infringement act specifically at issue here, the inducement to infringe X–Cyte's patent by installing infringing technology at another party's location, represents a claim that Amtech

---

**5.** All parties agree that patent infringement insurance exists. It appears from the official record that such a policy was not purchased due to cost.

*knowingly* did not comply with federal law. While one might be liable for a *direct* patent infringement through negligence rather than intent, to be liable for *inducing* another to violate the patent the act has to be intentional, not merely negligent. Therefore, the act complained of was nonetheless specifically excluded from coverage because under applicable federal law, an inducement to patent infringement must be intentional and therefore is specifically excluded from coverage.

### 3. Other Considerations—Direct Patent Violation

¶ 10 *Gammino, supra,* notes that inducement to infringe a patent is an intentional act while a direct patent violation need not be intentional. We note that a claim of sales of infringing technology is a claim of direct infringement. Because a direct claim need not be intentional, Exclusion D need not apply. However, this issue is not before us. The trial court determined, and apparently all parties agree, that the sale of the system did not represent a professional service. "However, since the sale of the IT2200 is not the "rendering of professional services as defined by the PL policy, sale alone does not implicate coverage." " Trial Court Opinion, 5/29/07, at 3. This determination is not explained in either the trial court opinion or in any of the briefs. However, we might suppose that it was agreed that selling the product did not involve a level of expertise and knowledge or was otherwise tangential to the expertise needed to develop the system that is otherwise required to be a professional service. Whatever the reason, no one has challenged the determination that selling the product was not a professional service and therefore is not covered under the policy.

■ ¶ 11 As noted, a claim of direct infringement does not necessarily mean an intentional violation of the Patent Act. A claim of direct infringement includes: "whoever makes, uses, *offers to sell or sells* any patented invention" without authority. 35 U.S.C. § 271(a) (emphasis added). Simply making or using a patented device without authority would not implicate professional services, which implies providing a service to another. Therefore, those aspects of section 271(a) are not covered by a professional liability insurance policy. Although the underlying complaint charged Amtech with the direct violation of selling infringing technology, the parties in this matter agree that selling an infringing device, although clearly a violation of the Patent Act, is not included as a professional service. Therefore, offering to sell or actually selling an infringing device is also excluded from coverage.

¶ 12 Once again, because the parties understand that selling the product is not part of professional services, it is demonstrated how the language of the policy, even without specifically mentioning "patent infringement," is meant to exclude that claim from coverage. While selling infringing technology is clearly a patent violation, because selling is not a professional service under the policy, there need be no specific disclaimer for selling infringing technology. The general language of the policy is sufficient to exclude the alleged direct patent violation from coverage. This, in turn, supports the conclusion that the policy was not designed to cover patent infringement.

### Conclusion

¶ 13 As a result of the above analysis it is clear that this professional liability policy was not designed and was never meant to cover a claim of patent infringement, either direct or indirect, brought by a competing vendor. It is also the general policy of this Commonwealth not to allow a party to convert one type of coverage into another available type of coverage. In this

matter, TransCore sought to convert its professional liability coverage into patent infringement coverage. Because requiring coverage would improperly convert one type of coverage into another, because the policy was not designed for the coverage sought, and because even if it were, the specific claim of induced patent infringement is excluded under Exclusion D, we reverse and remand for the entry of judgment in favor of Caliber One.

¶ 14 Judgment reversed. Case is remanded for action consistent with this decision. Jurisdiction relinquished.