**Ellen STOUMEN, administratrix of the Estate of Lisa Knowles, Deceased,**

v.

**PUBLIC SERVICE MUTUAL INSURANCE COMPANY.**

Civ. A. No. 93–0309.

United States District Court, E.D. Pennsylvania.

Sept. 15, 1993.

Simon J. Denenberg, Abramson & Denenberg, P.C., Philadelphia, PA, Morris M. Shuster, Shuster and Marvin, Bala Cynwyd, PA, Alan E. Denenberg, Philadelphia, PA, for plaintiff.

Michael P. McKenna, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are the plaintiff's Motion for Partial Summary Judgment, defendant's response, and the parties' supplemental memoranda.

### I. FACTUAL BACKGROUND

On January 15, 1989, Lisa Knowles was a passenger in an automobile involved in an accident, wherein she suffered injuries. At the time of the accident, Ms. Knowles was insured under two separate insurance policies issued by Allstate Insurance Company ("Allstate"). Each of these policies contained $15,000 limits for both general liability coverage and uninsured/underinsured motorist coverage. Before her death from unrelated causes on January 1, 1992, Ms. Knowles settled her liability and underinsurance claims against Allstate for $30,000, the combined amount due her under each policy.

Prior to the accident, Ellen Stoumen, the mother of Ms. Knowles, obtained a personal catastrophe liability insurance policy ("umbrella policy") from Public Service Mutual Insurance Company ("PSM"). This policy contained a stated limit of $1,000,000 for third-party bodily injury liability coverage. In addition, the policy also contained uninsured/underinsured motorist coverage with a stated policy limit of $35,000. With respect to this latter coverage, the policy required that any amounts received by the insured under any other insurance policies be deducted from the stated policy limit.

After Ms. Knowles' death, Ms. Stoumen submitted a claim under the underinsured motorist provision of her umbrella policy on her daughter's behalf, seeking compensation for Ms. Knowles' excess damages. To determine the extent of its liability, and in accordance with the policy's express terms, the defendant deducted the amounts received by Ms. Knowles under her Allstate policies from the maximum coverage allowed by Ms. Stoumen's umbrella policy. In applying this formula, the insurance company determined that its liability under the policy was $5,000, and it offered this amount to plaintiff in settlement of her claim. The plaintiff rejected this offer, and instituted this action.

### II. DISCUSSION

When this Court sits in diversity, it must apply the substantive law of the state in which it is located. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). "When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir.1990). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treaties, and restatements as guidance." *Id.* at 1239.

The plaintiff claims that Ms. Knowles' estate is entitled to $1,000,000 worth of uninsured motorist coverage under the plaintiff's umbrella policy. She bases this claim on her assertion that the umbrella policy constitutes an automobile insurance policy under Pennsylvania's Motor Vehicle Code. Section 1731 of the Pennsylvania Consolidated Statutes Annotated provides, in pertinent part:

> No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured are offered therein....

75 Pa.Cons.Stat.Ann. § 1731 (1993). This statute also requires insurance companies to obtain written waivers of uninsured/underinsured coverage from insureds who do not wish to carry such coverage. "If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." § 1731(c)(1). The defendants admit that they did not obtain plaintiff's waiver of uninsured motorist coverage when they issued her the umbrella policy. (*See* Defendant's Answer at ¶ 17). Accordingly, the plaintiff claims that pursuant to § 1731(c)(1), Ms. Knowles' uninsured motorist coverage under plaintiff's umbrella policy is $1,000,000, the equivalent amount of the policy's coverage for third-party bodily injuries.

The defendant on the other hand argues that insofar as umbrella policies are not automobile insurance policies under Pennsylvania's Motor Vehicle Code, § 1731 is inapposite to the instant action. In other words, the defendant claims that it bore no duty to obtain signed waivers of coverage from the plaintiff. Thus, the resolution of this case turns on the very narrow question of whether an umbrella policy is a "motor vehicle liability insurance policy" for purposes of § 1731.

Although the Pennsylvania Supreme Court has yet to address this issue, the issue has been confronted by numerous other courts, which have reached conflicting results. In her brief, the plaintiff attempts to reconcile these conflicting decisions. She observes that there are two types of uninsured motorist statutes: "minimum coverage" statutes and "full coverage" statutes. "Minimum coverage" statutes require motorists to maintain a minimum level of uninsured motorist insurance. The ostensible legislative policy underlying this type of statute is a desire to provide the injured motorist with the same level of protection that he would have otherwise received had the uninsured motorist carried the minimum level of insurance. In contrast, "full coverage" statutes require that an insured's underinsurance coverage equal his bodily injury liability insurance. These types of statutes purportedly evince a legislative desire to provide motorists with the fullest extent of insurance coverage possible. The plaintiff claims that in states which have adopted "full coverage" statutes, courts hold that umbrella policies are automobile insurance policies for purposes of the uninsured motorist statute. *See also* Lisa K. Gregory, *"Excess" or "Umbrella" Insurance Policy as Providing Coverage for Accidents with Uninsured or Underinsured Motorists,* 2 A.L.R.5th 922 (1992). Accordingly, because § 1731 is a "full coverage" type statute, the plaintiff claims that the Pennsylvania Supreme Court would likewise hold that umbrella policies are subject to the statute's provisions.

Although some courts have been persuaded by the plaintiff's argument, *see, e.g., Southern American Ins. Co. v. Dobson,* 441 So.2d 1185 (La.1983); *St. Paul Fire & Marine Ins. Co. v. Goza,* 137 Ga.App. 581, 224 S.E.2d 429 (1976), this Court does not believe that the type of uninsured motorist statute that a legislature chooses to adopt is dispositive of the issue of whether the legislature also intends to include umbrella policies within the statute's reach. *See Rowe v. Travelers Indem. Co.,* 245 Mont. 413, 800 P.2d 157, 159 (1990) (observing that drawing a "distinction between 'minimum liability' and 'full recovery' statutes is meaningless."). The recent development of Florida's law in this area illustrates the weakness of the plaintiff's argument. Florida has what the plaintiff describes as a "full coverage" uninsured motorist statute. Prior to 1984, Florida courts

held umbrella policies subject to the statute's requirements. *See, e.g., Chicago Ins. Co. v. Dominguez,* 420 So.2d 882 (Fla.App.1982), *rev. denied,* 430 So.2d 450 (Fla.1983). In 1984, however, Florida's General Assembly amended the statute for the express purpose of excluding umbrella policies from the statute's reach. *See Continental Ins. Co. v. Howe,* 488 So.2d 917 (Fla.App.1986). Significantly, the legislature retained the statute's "full recovery" nature. *See* Fla.Stat.Ann. § 627.727(2) (West 1993). Thus, as Florida's experience demonstrates, the type of uninsured motorist statute that a legislature adopts is not dispositive of the issue presented in this case.

The arguments in favor of excluding umbrella policies from uninsured motorist statutes are substantial. First, umbrella policies insure the policy holder in general, rather than a particular automobile within the state. *See Trinity Universal Ins. Co. v. Metzger,* 360 So.2d 960, 962 (Ala.1978). In fact, not only is it immaterial where the insured's car is kept, car ownership is immaterial. In either case, the insurance company will issue the insured a policy. Thus, the court finds that umbrella policies are not issued "with respect to a[ ] motor vehicle registered or principally garaged in this Commonwealth...." § 1731(a). Second, umbrella policies' raison d etre is to provide individuals with affordable protection against excess judgments of third parties, rather than provide individuals with automobile insurance. *See MacKenzie v. Empire Ins. Cos.,* 113 Wash.2d 754, 782 P.2d 1063, 1065 (1989) (citing 8C J. Appleman, *Insurance* § 5071.65 at 107 (1981)). This fundamental difference is underscored by the difference in premiums that an insurance company charges for the two types of policies. Due to the relative risks associated with each, the premiums that insurance companies charge for umbrella insurance are substantially lower than the premiums they charge for automobile insurance. *See Metzger,* 360 So.2d at 962. Third, the amount of coverage provided by umbrella policies is far greater than the coverage provided in the typical automobile insurance pol-

icy. Thus, if the Court were to adopt the plaintiff's position, a motorist holding an umbrella policy would actually be better off if he became involved in an accident with an uninsured motorist because he could then submit a claim under his umbrella policy and receive millions of dollars in coverage.

In light of the foregoing, the Court predicts that the Pennsylvania Supreme Court would adopt the majority rule [1] and hold that umbrella policies are not automobile insurance policies for purposes of § 1731. *Accord, Boyce v. St. Paul Fire and Marine Ins. Co.,* No. 92–6525, 1993 WL 229961, 1993 U.S.Dist. LEXIS 8602 (E.D.Pa. June 24, 1993) (Yohn, Jr., J.). Accordingly, the Court denies the plaintiff's Motion for Summary Judgment.

---

1. *See Rowe,* 800 P.2d at 160 (enumerating cases where courts "have concluded that umbrella policies are not 'motor vehicle liability policies as defined by their uninsured motorist statutory schemes....' '").