**NORTHERN INSURANCE CO. OF NEW YORK, Plaintiff,**

v.

**Tina N. DOTTERY et al., Defendants.**

**Civil Action No. 97–6288.**

United States District Court, E.D. Pennsylvania.

Dec. 10, 1998.

Allan C. Molotsky, Post & Schell, P.C., Philadelphia, PA, for plaintiff.

Aaron Freiwald, Kline and Specter, Philadelphia, PA, for defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. INTRODUCTION

This case involves a dispute over motor vehicle insurance coverage. Plaintiff, Northern Insurance Co. ("Northern") seeks a declaration that defendant, the Estate of Tara Lynn Dottery ("the Estate"), and Tara Lynn Dottery's parents (jointly with the Estate referred to as "the Estate") are not entitled to underinsured motorist ("UIM") benefits under three policies issued by Northern.

Dottery died in a one-car accident while riding in a Jeep driven by Richard Kulik. At the time of the accident, the Jeep was leased by John Kulik ("Kulik"), Richard's father, from Keystone Dodge, Inc. ("Keystone"). As required under the lease, the Jeep was covered by a motor vehicle liability insurance policy. This policy was issued by Harleysville Mutual Insurance Co. to Kulik ("Harleysville policy"), which provided financial responsibility to Kulik for the Jeep. After the accident, Harleysville paid the policy limits and obtained a release from the Estate. However, the amount of the damages sustained by Dottery in the accident exceeded the amount of the coverage under the Harleysville policy.

Keystone is in the business of leasing motor vehicles. At the time of the accident, Keystone was the named insured under a commercial policy, a package policy including a garage policy, and a commercial umbrella policy issued to Keystone by plaintiff Northern Insurance Co. (the "Northern policies"). Keystone did not waive UIM coverage in any of the Northern policies.

The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons.Stat. § 1701 *et seq.*, provides that every motor vehicle liability insurance policy issued or delivered in Pennsylvania must provide for underinsured motorist coverage unless such coverage has been waived by the named insured. Therefore, since it is undisputed that the Keystone policies did not provide for underinsured coverage, and Keystone did not waive such coverage, if the Northern policies are motor vehicle liability policies, as claimed by the Estate, the Northern Policies must be reformed to afford the Estate UIM coverage.

Before the Court are cross-motions for summary judgment. For the reasons that follow, the Court finds that the Northern policies are clear and unambiguous, that they are not motor vehicle liability policies for the purposes of the UIM requirements under the MVFRL, and that, therefore, the Estate may not assert a claim for UIM coverage under them.

### II. LEGAL STANDARD

#### A. *Summary Judgment*

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On cross-motions for summary judgment, the court must determine separately, as to each party's motion, whether judgment may be entered in accordance with the summary judgment standard. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 23–25 (2d ed. 1983).

### B. *Interpretation of Insurance Contracts*

 Under Pennsylvania law, the interpretation of insurance contracts is a matter for the court to decide.[1] *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 900 (3d Cir.1997) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983)). The

focus of the inquiry is the reasonable expectation of the insured, and the court must examine the totality of the insurance transaction. *Bubis v. Prudential Property & Cas. Ins. Co.,* 718 A.2d 1270, 1272 (Pa.Super.1998) (citing *Dibble v. Security of America Life Ins. Co.,* 404 Pa.Super. 205, 590 A.2d 352, 354 (1991)). "While reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *Id.* (internal citations omitted). Therefore, " '[w]here ... the language of the contract is clear and unambiguous, a court is required to give effect to that language.' " *Bensalem Township v. International Surplus Lines Ins. Co.,* 38 F.3d 1303, 1309 (3d Cir.1994)(quoting *Standard Venetian Blind,* 469 A.2d at 566 (1983)). Determining whether a policy is ambiguous is a question of law. *Gift v. Nationwide Ins. Co.,* No. 97–6934, 1998 WL 164997, at *2 (E.D.Pa. Apr.9, 1998)(citing *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985)). "A provision is ambiguous only if reasonably intelligent persons, considering it in the light of the entire policy, can honestly differ as to its meaning." *Curbee, Ltd. v. Rhubart,* 406 Pa.Super. 505, 594 A.2d 733, 735 (1991). For the reasons set forth below, the Court finds the language of the Northern policies to be clear and unambiguous.

### III. DISCUSSION

#### A. *The Parties' Contentions*

Plaintiff Northern contends that the responsibility to provide UIM coverage fell upon Kulik, the lessee of the vehicle in question. Since it is undisputed that Kulik obtained UIM coverage for the Jeep under the Harleysville motor vehicle liability poli-

---

1. The parties agree that in this diversity case, Pennsylvania law applies. " 'In the absence of guidance from the state's highest court, [the Court is] to consider decisions of the state's intermediate appellate courts for assis-

tance in predicting how the state's highest court would rule." *2–J Corp. v. Tice,* 126 F.3d 539, 541 (3d Cir.1997) (quoting *Gares v. Willingboro Township,* 90 F.3d 720, 725 (3d Cir.1996)).

cy, Northern argues the MVFRL was satisfied. Northern further argues that the Northern policies are not motor vehicle liability policies for the purposes of the UIM requirements of the MVFRL, rather they are special policies or excess policies intended to cover liability claims against Keystone, as the named insured, which Keystone may be legally required to pay over and above its primary insurance coverage. Northern, therefore, contends that the MVFRL does not mandate that UIM coverage be provided under the Northern policies.

Defendants retort that the Northern policies are motor vehicle liability policies. Defendants contend that Pennsylvania law requires that every motor vehicle liability insurance policy issued or delivered in Pennsylvania provide underinsured coverage unless such coverage is waived.[2] Further, according to defendants, since the Northern policies were issued in Pennsylvania and did not provide for UIM coverage nor was there a written waiver of UIM coverage executed by Keystone, the Northern policies must be reformed to provide for UIM coverage.

The ultimate issue before the Court, as to each Northern policy, is whether the policy was "written to satisfy the MVFRL." *Electric Ins. Co. v. Rubin*, 32 F.3d 814, 818 (3d Cir.1994).

### B. *The Statutory Framework*

The MVFRL provides that "[e]very motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility." 75 Pa. Cons. Stat. § 1786(a). "Financial responsibility" is the "ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident in the amount of $5,000 because of damage to property of others in any one accident." 75 Pa. Cons.Stat. § 1702. The Pennsylvania Department of Insurance defines "financial responsibility" as "[a] motor vehicle liability insurance policy or program of self insurance, complying with the requirements of 75 Pa.C.S. Section 1787 (relating to self insurance) and approved by the Department covering all motor vehicles registered in a person's name." 67 Pa. Code § 221.2 (1998). Maintaining financial responsibility for a vehicle is the responsibility of the vehicle's owner or registrant. 75 Pa. Cons.Stat. § 1786; *Lebanon Coach Co. v. Carolina Cas. Ins. Co.*, 450 Pa.Super. 1, 675 A.2d 279, 284 (1996), *appeal denied*, 546 Pa. 695, 687 A.2d 378 (1997).

The MVFRL also provides for the availability of uninsured and underinsured coverage. 75 Pa. Cons.Stat. § 1731. UIM insurance is designed to permit persons to recover damages, 75 Pa. Cons.Stat. § 1731(c), from an owner or operator of "a motor vehicle for which the limits of available liability insurance and self insurance are insufficient to pay loss or damages," 75 Pa. Cons.Stat. § 1702. The MVFRL provides that every motor vehicle liability insurance policy issued or delivered in Pennsylvania include UIM coverage equal to bodily injury liability coverage provided for in the policy, unless the UIM coverage is rejected by the insured. 75 Pa. Cons. Stat. § 1731(a). The named insured must be informed of the availability of UIM coverage thus allowing the named insured to reject UIM coverage.[3] 75 Pa. Cons. Stat. § 1731(b),(c).

---

2. Defendants cite to *DeSilva v. Kemper Nat'l Ins. Co.*, 837 F.Supp. 98 (E.D.Pa.1993) and *Byers v. Amerisure Ins. Co.*, 745 F.Supp. 1073 (E.D.Pa.1990) as determinative of the issue. These cases stand for the proposition that under the MVFRL, where an insurer does not follow the statutory requirements for waiver of UIM coverage, the policy must be reformed to include that coverage. The question in this case is not whether waiver of UIM coverage was effective, but rather whether the policies in question are even subject to the UIM requirements of the MVFRL.

3. Before 1990, UIM insurance in Pennsylvania was mandatory. Since the 1990 amendments, however, the purchase of UIM coverage is optional, while the offering of such

**514**

"The purpose of uninsured motorist coverage is to protect the insured (and additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate coverage to compensate for the injuries caused by his negligence." *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1236 (Pa.1994) (cited by *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006, 1008 (1998)). The "enactment of the MVFRL reflected legislative concern for the spiralling consumer cost of automobile insurance and resulting increase in the number of uninsured motorists driving on public highways." *Eichelman,* 711 A.2d at 1008 (quoting *Rump v. Aetna Casualty & Surety Co.,* 551 Pa. 339, 710 A.2d 1093 (1998)). *See also, Gift,* 1998 WL 164997, at *2, *Paylor,* 640 A.2d at 1235; *Danko v. Erie Ins. Exchange,* 428 Pa.Super. 223, 630 A.2d 1219, 1222 (1993); *Lambert v. McClure,* 407 Pa.Super. 257, 595 A.2d 629, 631 (1991). *Kelly v. Nationwide Ins. Co.,* 414 Pa.Super. 6, 606 A.2d 470 (1992) (citing *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988)).

In cases where the motor vehicle is leased from a person who is engaged in the business of leasing motor vehicles, the duty to provide financial responsibility, including the duty to provide UIM coverage, may be satisfied by the lessee. 75 Pa. Cons.Stat. § 1786(e)(5). A lessee, like any named insured, must be informed of the availability of UIM coverage by the lessee's insurer, and allowed an opportunity to reject or limit the UIM coverage. *Id.*

## C. *Motor Vehicle Liability Policies*

▉ Pennsylvania law recognizes that not all insurance policies that afford cover-

age for liability arising out of the operation or use of automobiles are considered motor vehicle liability policies. Specifically, if the policies are excess or umbrella policies, they are not subject to the requirements of the MVFRL. *Rubin,* 32 F.3d 814; *Kromer v. Reliance Insurance Company,* 450 Pa.Super. 631, 677 A.2d 1224 (1996), *aff'd,* 548 Pa. 209, 696 A.2d 152 (1997). *See also Rowe v. Travelers Indem. Co.,* 245 Mont. 413, 800 P.2d 157, 160–161 (1990)(collecting cases and concluding that "the majority of courts which have addressed this issue have concluded that umbrella policies are not 'motor vehicle liability policies' as defined by their uninsured motorist schemes"). Generally, an excess policy is one that "provides for payment of that portion of the claim that remains unpaid once other [liability] coverage is exhausted." *Automobile Underwriters v. Fireman's Fund Ins. Co.,* 874 F.2d 188, 193 (3d Cir.1989). An umbrella policy is a type of excess policy.[4]

In *Electric Ins. Co. v. Rubin,* 32 F.3d 814 (3d. Cir.1994), the Third Circuit predicted that the Pennsylvania Supreme Court would not hold that an excess policy was subject to the MVFRL. *Rubin* involved the claim that the insurer had an obligation to provide coverage under a personal excess liability insurance policy the insurer had issued to a husband for claims made by his wife arising from an automobile accident. The court noted:

The excess policy in this case simply was not written to satisfy the MVFRL. In fact, insomuch as the policy required [the husband] to carry underlying liability coverage, it is clear the excess policy contemplated that [the husband] have some other policy to satisfy MVFRL. In these circumstances, we find nothing in the

---

coverage remains mandatory. 75 Pa. Cons. Stat. § 1731; *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1236 n. 1 (1994).

**4.** "An 'umbrella policy' is a supplemental insurance policy which protects insureds against losses in excess of the amount covered by their other liability insurance policies and

fills in gaps in coverage." *Fratus v. Republic Western Ins. Co.,* 147 F.3d 25 (1st Cir.1998) (citing *Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 7 F.3d 1047, 1053 (1st Cir.1993)). *See also, Kromer,* 32 F.3d at 815 (noting that personal excess liability policies are sometimes called "umbrella policies").

MVFRL to support the [plaintiffs'] claim that the excess policy had to be written with liability coverage conforming to the MVFRL's requirements.

*Id.* at 818–19.

The teachings of *Rubin* were explicitly followed by the Pennsylvania Superior Court in *Kromer v. Reliance Insurance Company*, 450 Pa.Super. 631, 677 A.2d 1224 (1996), *aff'd*, 548 Pa. 209, 696 A.2d 152 (1997). *Kromer* involved a claim for UIM coverage by employees of the insured, who had been injured in an automobile accident, to recover under the insured's umbrella and commercial excess liability policies. The Superior Court held that there was no coverage, stating:

Coverage under the [insurer's] excess policies is only triggered by claims of liability against the insured from third parties. Such coverage is not triggered by claims from first party uninsured motorist coverage.

*Kromer*, 677 A.2d at 1230.

In addition to the Third Circuit's decision in *Rubin*, *Kromer* looked to two Eastern District of Pennsylvania decisions for guidance. *See Boyce v. St. Paul Fire and Marine Ins. Co.*, No. 92–6525, 1993 WL 175371 (E.D.Pa. May 25, 1993), *reconsideration denied*, 1993 WL 229961 (E.D.Pa. June 25, 1993); *Stoumen v. Public Service Mut. Ins. Co.*, 834 F.Supp. 140 (E.D.Pa. 1993).

In *Boyce*, the plaintiff was a passenger in an ambulance which was struck by a car operated by an uninsured vehicle. The operator of the ambulance carried motor vehicle liability insurance as well as an excess liability policy. Plaintiff sought to recover underinsured benefits under the excess liability policy. The motor vehicle liability policy provided that "we'll pay amounts to you ... [as the insured] ... are legally entitled to collect from the owner ... of an uninsured vehicle...." *Id.* at *9. In turn, the excess policy provided that it would pay damages the insured is "legally obligated to pay ... if damages

are over the coverage limits of the [basic coverage]." *Id.* The court noted that "in an uninsured motorist accident, the party that is legally required to pay for damages is the uninsured motorist." *Id.* Therefore, since neither the plaintiff, an occupant of the vehicle, nor the insured, operator of the vehicle, was legally required to pay UIM benefits under the underlying liability policy, the court concluded that the excess policy is not "an auto vehicle liability policy. Rather, the policy provides umbrella excess liability coverage." *Boyce*, No. 92–6525, 1993 WL 229961, at *2 (E.D.Pa. June 25, 1993) (denying plaintiffs' motion for reconsideration).

In *Stoumen*, plaintiff had secured a one million dollar umbrella policy providing third-party bodily injury liability coverage. Plaintiff's daughter was a passenger in an automobile involved in an accident. After her daughter's death, (unrelated to the accident) the plaintiff submitted a claim on her daughter's behalf under the plaintiff's umbrella policy seeking UIM coverage on the basis that the umbrella policy constituted a motor vehicle policy. The court pointed to at least three factors which distinguish umbrella policies from liability policies: (1) umbrella policies insure the policy holder in general rather than a particular automobile; (2) umbrella policies provide for much lower premiums for the same risk than automobile insurance policies; and (3) the amount of the coverage under an umbrella policy is far greater than that under a typical automobile policy. *Stoumen*, 834 F.Supp. at 143. Applying these factors, the court concluded that the policies in the case was an umbrella policy, and, therefore, UIM coverage was not available to plaintiff. *Stoumen*, 834 F.Supp. at 143.

At least one other decision of the Pennsylvania Superior Court provides additional guidance to the determination of what is a "motor vehicle liability policy" subject to

the UIM requirements of the MVFRL.[5] In *St. Paul Mercury Ins. Co. v. Corbett,* 428 Pa.Super. 54, 630 A.2d 28 (1993), plaintiff, while driving a vehicle owned by his employer, was the victim of a "hit and run" accident, sustaining severe injuries. The employer's vehicle was insured by a policy that provided $15,000 UIM insurance as required by the MVFRL. Because the employer's UIM coverage was inadequate to compensate him for the injuries suffered in the accident, the plaintiff also sought UIM benefits under, *inter alia,* one of his own policies, a special antique policy covering a 1952 Singer Roadster, which provided for $50,000 in UIM benefits. *Id.* The policy restricted UIM coverage to the insured, the insured's family members, or any other person occupying the "covered vehicle," which was the antique vehicle. The court determined that "[c]learly, a specialty or limited use policy such as the antique automobile policy before us must be distinguished from an ordinary policy covering a personal use automobile." *Id.* 630 A.2d at 32. The court noted that "[t]he antique policy is not designed to provide UM benefits to a covered person in a hit and run accident unless the uninsured motor vehicle hits the antique auto," and found that the plaintiff could not have reasonably expected coverage for his claim. *Id.* The court pointed to the language of the policy and the fact that the premiums charged for UIM coverage under the antique policy were substantially lower than those charged for a personal automobile liability policy.[6] *Id.* The court thus concluded:

> Recognizably, in order to reduce the costs of insurance, the Legislature must have intended to maintain different classifications of insurance such as the antique policy in this case. The policy purchased by Corbett is a special insur-

ance policy designed specifically for antique and collector automobiles. The very limited use of antique automobiles does not subject them to the normal exposure or danger from uninsured motorists.... If coverage is permitted under the circumstances presented here, the distinctions between antique automobile insurance and other types of insurance will be eradicated and premiums for antique vehicle insurance will be on par with personal automobile insurance. This result was not contemplated by the Legislature in enacting the MVFRL.

*Corbett,* 630 A.2d at 32 (citing *Wolgemuth,* 370 Pa.Super. 51, 535 A.2d 1145). In short, the Superior Court, in *Corbett,* recognized that certain limited use policies could be distinguished from an "ordinary policy covering a personal use automobile," and that those special policies were not required by the MVFRL to provide UIM coverage.

■ Synthesizing the teachings of these authorities, in determining whether a particular policy is a motor vehicle policy which "[was] issued to satisfy the MVFRL," *Rubin,* 32 F.3d at 818, courts should consider, *inter alia,* the following factors, where applicable:

1. Does the policy itself provide that it is an excess or umbrella policy?

2. Does the policy require the insured to carry underlying liability coverage?

3. Is the claim under consideration made by a first-party and not by a third-party injured in the accident?

4. Is the party making the claim not legally required to pay for the damages to the injured person?

5. Does the policy afford coverage to the insured in general rather than to a particular a vehicle?

---

**5.** Also, in *Nationwide Ins. Co. v. Calhoun,* 430 Pa.Super. 612, 635 A.2d 643, 647 (1993), the Superior Court concluded, however, without much analysis, that the UIM provisions of the MVFRL were inapplicable as a matter of law to a policy that only provided comprehensive coverage.

**6.** "This case illustrates the time worn maxim, 'you get what you pay for.'" *Corbett,* 630 A.2d at 32.

6. Is the policy designed to insure a special risk?

7. Was there a premium charged for liability coverage, but not for UIM coverage?

8. Is the premium paid substantially lower than one which would provide for similar coverage under a primary automobile liability policy?

9. Is the amount of the coverage substantially higher than that afforded under a primary automobile insurance policy for the same risk?

On balance, if the answers to these questions are yes, then the policy is not a motor vehicle policy written to satisfy the MVFRL.[7]

### D. *The Northern Policies*

Northern issued three policies to Keystone, a commercial policy, no. ECA21143426, a package policy, including garage coverage, no. EPA17927188, and an umbrella Policy, no. UBA86403426.

#### 1. *The commercial policy*

█ Northern issued a commercial policy of insurance, including a commercial

---

7. While each one of these factors guides the inquiry into whether the policy is a motor vehicle policy issued to satisfy the MVFRL, not all factors may be present in each case.

8. The policy also included comprehensive and collision coverage. (Stip.Ex.F., Truckers Coverage Part Declarations.)

9. The policy provides:

*We pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by the maintenance or use of a covered "auto."*
The following are "insureds" for covered "autos."
a. You for any covered "auto."
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow, except:
(1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the cov-

---

truckers coverage part, to Keystone for the period from January 2, 1995 to January 2, 1996 with a liability limit of $1 million for bodily injury claims made against Keystone. (Stipulation of Facts ("Stip.") Ex. F., Truckers Coverage Part Declarations.) Northern charged a premium of $8,580 for liability coverage.[8] *Id.* No premium was charged for UIM coverage. *Id.* Plaintiff claims that "the sole purpose of this coverage was to provide liability coverage to the extent the named insured, i.e. Keystone, was liable to third parties for any operation of a vehicle which was leased."[9] Pl's. Mem. at 11.

The Court concludes that the language of the policy is clear and unambiguous and that it was not written to satisfy the UIM requirements of the MVFRL for the following reasons: (1) the language of the policy provides that it is a liability policy ("We pay all sums [you] must pay as damages...." *Supra* note 8.); (2) the policy requires that the lessee of a "leased auto," such as Kulik in this case, carry UIM insurance ("The lessee or rentee has furnished you with a certificate of insurance....");[10]

(3) the policy charged a premium for liability coverage, but none for UIM cover-

---

ered "auto" is a "trailer" connected to a covered "auto" you own.
(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.
(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations."
(4) Anyone other than your employees, partners, a lessee or borrower or their employees, while moving property to or from a covered "auto."
(5) A partner of yours for a covered "auto" owned by him or her or a member of his or her household.
c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.
(Stip.Ex.F., Business Auto Coverage Form sec. II.A.1 (emphasis added).)

10. The policy limits the coverage with respect to leased vehicle as follows:

age; and (4) the policy does not provide coverage for specific vehicles.

### 2. The package policy

■ Northern issued a package policy of insurance, including a garage policy,[11] to Keystone for the period January 2, 1995 to January 2, 1996 with liability coverage of $1 million and UIM coverage of $250,000 dollars for "covered autos". (Stip. Ex. G, Garage Coverage Part Declarations.) Symbol 26 to the "Covered Autos" section of the policy limits UIM coverage to:

> [o]nly those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Unin-

sured Motorist Coverage. This includes those "autos" you acquire ownership of after the policy begins proved they are subject to the same state uninsured motorist requirement.

(Stip. Ex. G., Garage Coverage Form, sec. I.A.26.) This language, therefore, excludes coverage of Pennsylvania vehicles because Pennsylvania is a state that permits insureds to reject UIM coverage. *See* 75 Pa. Cons.Stat. § 1731.

■ Even if the policy is applicable to Pennsylvania vehicles, the policy restricted UIM coverage to only 10 named individuals.[12] (Stip.Ex. G, Drive Other Car Coverage—Coverage for Named Individuals.)[13] This endorsement amended the definition

A. Liability Coverage and any required no-fault insurance provided by the policy for a covered "auto" that is a "leased auto:" applies subject to the following provisions:
1. a. *The lessee or rentee has furnished you with a certificate of insurance, a copy of the policy or a copy of the endorsement, making you an additional insured on the lessee's or rentee's policy as required by the Leasing or Rental Agreement;* and
 b. At the time of an "accident" the insurance required by the Leasing Agreement is not collectible.
2. For you, your employees, or agents, the Limit of Insurance provided by this endorsement is the lesser of:
 a. The limits of liability required by the Leasing Agreement; or
 b. The amount shown in the Schedule.
3. For the lessee or rentee, any employee or agent of the lessee or rentee or any person, except you or your employees or agents, operating the "leased auto" with the permission of any of these, the Limit of Insurance provided by this endorsement is the minimum limit required by any applicable compulsory financial responsibility law.
4. The insurance provided by this endorsement is excess over any other collectible insurance, whether primary, excess or contingent, unless such insurance is specifically written to apply in excess of this policy. (Stip.Ex. F, Leasing or Rental Concerns—Contingent Coverage (emphasis added).) An endorsement further defines "leased auto" as: An "auto" you lease or rent to a lessee or rentee, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a lease or rental agreement that requires the lessee or

rentee to provide primary insurance for you.
*Id.*

11. The policy included a commercial property coverage part, a commercial crime coverage part, a commercial inland marine coverage part, a boiler and machinery coverage part, and a garage coverage part. Stip.Ex.G.

12. The following individuals are named: Edward Lee Merrill, Lori Merrill, Timothy Merrill, Karen Merrill, Shawn P. Merrill, Charles E. Merrill, III, Patricia A. Merrill, Charles E. Merrill, Lillian Walter, and Florence Roberts. (Stip.Ex. G, Drive Other Car Coverage—Coverage for Named Individuals.)

13. Such a restriction is permissible under Pennsylvania law. *See, e.g., Corbett,* 630 A.2d at 32. In *Corbett,* The court, recognizing that in enacting the MVFRL, the Legislature "intended to control spiraling insurance costs," and citing cases decided by the Superior Court that found policy exclusions restricting UIM benefits not to be contrary to Pennsylvania public policy, found that the limitation of coverage in the policy in question to antique vehicle was not contrary to public policy. *Id.* (collecting cases). *See also, Gift v. Nationwide Ins. Co.,* No. 97-6934, 1998 WL 164997 (E.D.Pa. Apr.9, 1998) (R. Kelly, J.) (concluding despite the fact there was no evidence that plaintiff knew he was riding in stolen vehicle "non permissive use exclusion" in policy did not violate Pennsylvania public policy); *Nationwide Mut. Ins. Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338 (1994) (holding that nonpermissive use exclusion for uninsured motorist benefits did not violate public

of "who is an insured to add: '[a]ny individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" as described in paragraph B.1 of this endorsement.' " (Stip.Ex.G. at sec. B.2.) Further, these individuals are only covered inasmuch as the car they are using is not owned, hired, or borrowed by the insured. (*Id.* at sec. B.1.). Moreover, the policy serves as an excess policy in that it limits the liability insurance available to the amount in which the statutory minimum exceeds the lessees own insurance.[14] Finally, the language of the policy, read as a whole, indicates that it was intended to insure Keystone for the special risk associated with its employees, as part

of Keystone's business operations, driving vehicles owned by Keystone's customers while these vehicles were garaged at the Keystone location and not to provide UIM coverage for lessees of the insured's vehicles. *See Corbett*, 428 Pa.Super. 54, 630 A.2d 28.

Based upon these elements of the policy, the Court concludes that the language of the package policy is clear and unambiguous and that it was not written to satisfy the MVFRL[15] for the following reasons: (1) UIM coverage under the policy is not provided in Pennsylvania; (2) UIM coverage is limited to 10 named individuals;[16] (3) the policy indicates that the policy is excess over other insurance, including a Keystone customer's underlying insurance;

---

policy); *Marino v. General Accident Ins. Co.*, 416 Pa.Super. 1, 610 A.2d 477 (1992) (holding that exclusion from UIM coverage when insured vehicle was operated to transport persons or goods for fee did not violate MVFRL or public policy).

14. a. The following are "insureds" for covered "autos."

(1) You for any covered "auto."
(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow, except:
 (a) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
 (b) Your employee if the covered "auto" is owned by that employee or a member of his or her household.
 (c) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations."
 (d) Your customers, if your business is shown the Declarations as an "auto" dealership. However, if a customer of yours:
 (i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.
 (ii) *Has other available insurance (whether primary, excess or continent) less than the compulsory or financial responsibility law limits where the covered "auto" is princi-*

pally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the amount of their own insurance.
 (e) A partner of yours for a covered "auto" owned by him or her or a member of his or her household.

(Stip.Ex. G, Garage Coverage Form, sec. II. A.1 (emphasis added).)

15. The Court notes that in an endorsement to the package policy, entitled "Pennsylvania Changes" the policy states: "The premium for, and coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law." Stip.Ex.G., Pennsylvania Changes. While this statement expresses an intent to generally comply with the applicable insurance law in Pennsylvania, *Rubin*, was concerned with an intent to specifically satisfy the UIM requirements of the MVFRL as it related to motor vehicle liability policies.

16. "Insureds are free to limit coverage, so long as it is in the excess of the minimum required by the law, and thereby obtain a lower premium because of the exclusion of a high risk .... [and] 'courts have no authority to extend the liability of the insurance company beyond the contract made in full compliance with the law.' " *Bowers by Brown v. Feathers*, 448 Pa.Super. 263, 671 A.2d 695, 700–01 (1995), *appeal denied*, 550 Pa. 696, 705 A.2d 1303 (1997) (quoting *Kyle v. McCarron*, 201 Pa.Super. 403, 192 A.2d 253, 258 (1963)).

(4) the policy affords coverage to the insured in general rather than to particular vehicles; (5) the claim is one made by a first party, rather than a third party; and (6) the policy insures a special risk associated with Keystone employees driving customers' vehicles while the vehicles were garaged at the Keystone location.

### 3. *Umbrella Policy*

■ Northern issued a commercial umbrella policy of insurance to Keystone for the period from January 2, 1995 to January 2, 1996 with a liability limit of $5 million. (Stip.Ex.H.).

The Court notes that the umbrella policy excludes from coverage leased vehicles.[17] Moreover, the commercial umbrella policy requires the insured to carry underlying bodily injury ($250,000 per person and $500,000 each accident), property damage insurance of $100,000 each accident or bodily injury and property damage combined single limits of $500,00 each accident. (Stip.Ex. H, Automobile Leasing and Rental Endorsement.) The underlying insurance is detailed at Item 1.6 of the commercial umbrella policy and lists the following types of coverage: employer liability, automobile liability, commercial general liability.

The Court concludes that the language of the policy is clear and unambiguous and that it was not written to satisfy the MVFRL for the following reasons: (1) the policy itself states that it is an umbrella policy; (2) it requires the insured to carry underlying liability insurance; (3) coverage is triggered by claims made by third parties, rather than first parties, and (4) provides coverage to the insured in general, rather than to specific vehicles.

### IV. CONCLUSION

The Court has reviewed the factors articulated by courts examining this issue, and applied the factors to the Northern policies. The Court concludes that the Northern policies were clearly and unambiguously written as excess policies, and that the Northern policies are not motor vehicle liability policies which were written to satisfy the UIM requirements for motor vehicle liability insurance under the Pennsylvania Motor Vehicle Insurance Law. Therefore, since there is no genuine issue of material fact, and the plaintiff is entitled to judgment as a matter of law, the Court will grant summary judgment in favor of plaintiff and against defendants.

An appropriate order follows.

### *ORDER*

**AND NOW**, this **7th** day of **December, 1998**, upon consideration of the plaintiff's motion for summary judgment, the defendants' motion for summary judgment and the respective responses and after oral argument, it is **ORDERED** that the plaintiff's motion is **GRANTED** and that the defendants' motion is **DENIED**.

It is further **ORDERED** that Judgment is entered in favor of plaintiff and against defendants.

**AND IT IS SO ORDERED.**

---

17. The Automobile Dealers Restrictive Endorsement to the policy states:

*This policy does not apply:*

(1) To any business of the insured other than that of an auto dealer,

(2) *to any "auto" rented to others by the insured unless* (1) to a salesman for use principally in the business of the insured or (2) to a customer for use while the customer's "auto" is being repaired by the insured and then only if such insurance is also provided by a policy listed in Item 1.6 of the Declarations.

(3) to damage to any "autos" held for sale by the insured.

(4) to any "auto" while being operated in any prearranged or organized racing or speed contest or in practice or preparation for such contest.

(Stip.Ex. H, Automobile Dealers Restrictive Endorsement (emphasis added). *See also* Stip.Ex. H, Automobile Leasing and Rental Endorsement.)